# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 31717

| | | |
|---|---|---|
| JOHN N. BACH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOB BAGLEY and MAE BAGLEY, husband | ) | |
| and wife; and DOES 1 through 30, inclusive, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | Boise, January 2010 Term |
| | ) | |
| KATHERINE D. MILLER, aka | ) | 2010 Opinion No. 25 |
| KATHERINE M. MILLER, dba R.E.M.; | ) | |
| ALVA HARRIS, individually, and dba | ) | Filed: March 17, 2010 |
| SCONA, INC.; JACK LEE McLEAN; BOB | ) | |
| FITZGERALD, individually, dba CACHE | ) | Stephen W. Kenyon, Clerk |
| RANCH; OLE OLESON; BLAKE LYLE, | ) | |
| individually, dba GRAND TOWING; | ) | |
| GALEN WOELK and CODY RUNYAN, | ) | |
| individually, dba RUNYAN & WOELK; | ) | |
| ANN-TOY BROUGHTON; WAYNE | ) | |
| DAWSON; MARK LIPONIS; EARL | ) | |
| HAMBLIN; THE ESTATE OF STAN | ) | |
| NICKELL; BRET HILL and DEENA R. | ) | |
| HILL, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. The Honorable Richard T. St. Clair, District Judge.

The various orders and judgment of the district court are <u>affirmed</u>.

John N. Bach, appellant pro se.

Alva A. Harris, Shelley, attorney for respondents Harris, individually and dba Scona, Inc.; McLean; Fitzgerald, individually and dba Cache Ranch; Oleson; and Lyle, individually and dba Grand Towing and Grand Body & Paint. Alva A. Harris argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for respondents Galen Woelk and Cody Runyan, individually and dba Runyan & Woelk. Jason D. Scott argued.

Hopkins Roden Crockett Hansen & Hoopes, PLLC, Idaho Falls, for respondent Earl Hamblin. C. Timothy Hopkins argued.

Baker & Harris, Blackfoot, for respondents Wayne Dawson and Bret and Deena Hill. Jared M. Harris argued.

Rigby, Thatcher, Andrus, Rexburg, for respondent Estate of Stan Nickell. Hyrum D. Erickson argued.

Aron and Hennig, Laramie, Wyoming, for respondent Miller. Galen B. Woelk argued.

———————————

J. JONES, Justice.

John N. Bach appeals an adverse final judgment and a number of pre- and post-trial orders. We affirm the orders and judgment of the district court.

## I.
## Factual and Procedural Summary

Between 1992 and 2000, John N. Bach acquired various interests in real property in Teton County under variations of the name "Targhee Powder Emporium." However, he took no action to establish a separate legal entity in that name or to file an assumed business name certificate until 2007. Bach also purported to acquire some interests in real property on behalf of the Vasa N. Bach Family Trust, which was established by Bach's mother in 1993 with Bach as the trustee. Bach treated all acquired property interests as his personal property, even executing assignments on behalf of these entities to himself in a personal capacity.

As a result of his acquisition and use of these interests, Bach's relationship with several neighboring land owners and other Teton County residents, including the respondents, deteriorated, culminating in a series of altercations that Bach characterized as "raids" on his property. There is evidence in the record that some of the respondents did enter upon real property which Bach occupied and carried away or caused damage to his personal property, resulting in the district court's entry of a preliminary injunction. There is also some evidence that threats were made against Bach by some of the respondents and vice-versa. However, there is

2

also evidence to indicate that many of the "raids" resulted from actions taken by Bach to block Katherine Miller's access to a parcel of property purportedly jointly owned by Bach and Miller, as well as another parcel held solely by Miller. Apparently prompted by Bach's actions, Miller, Jack McLean, Mark Liponis, and Alva Harris joined together to form an incorporated entity known as Targhee Powder Emporium, Inc., whose name they subsequently used to deed land interests, which Bach had obtained in the name of the Targhee entities, back to allegedly defrauded parties.

Bach filed suit against Miller; Harris; Scona, Inc.; Bob Fitzgerald; Ole Oleson; Blake Lyle; McLean;[1] Galen Woelk; Cody Runyan; Bob and Mae Bagley; Ann-Toy Broughton; Wayne Dawson; Earl Hamblin; Stan Nickell;[2] Bret and Deena Hill; and Liponis (collectively, the respondents) on July 23, 2002, with some parties added by an amended complaint.[3] The amended complaint that Bach filed on September 27, 2002, contained eleven counts. Counts one through four sought to quiet title to the parcels of real property described below. The remaining counts alleged causes of action for slander of title, intentional interference with prospective economic advantage, breach of fiduciary duty, conversion, racketeering, malicious prosecution, and malicious harassment. After attempting unsuccessfully to have the amended complaint dismissed, Miller filed an answer and counterclaim against Bach, the Targhee entities, and the Vasa N. Bach Family Trust,[4] asserting claims for fraud, trespass, slander of title, and breach of fiduciary duty. Broughton,[5] Nickell, Runyan, and Woelk also immediately answered. The remaining parties, as discussed below, were defaulted and either had default set aside or judgment entered against them.

Bach sought to quiet title to five different parcels of real property. The first parcel, the subject of Bach's jury trial against Miller, consists of approximately 87 acres that Miller and one of Bach's fictitious business entities, Targhee Power Emporium, purchased from Lovell and Lorraine Harrop in 1995. Based on various misrepresentations made by Bach, Miller signed a

---

[1] Jack McLean passed away in December 2003. His daughter, Lynn McLean, was appointed personal representative of his estate in Teton County and the estate was substituted for Jack McLean as a party defendant.

[2] Stan Nickell passed away during these proceedings and his wife, Arlene Nickell, as personal representative of his estate, was substituted as a party defendant.

[3] Runyan, Liponis, and the Bagleys were dismissed because Bach failed to effect timely service of process on them as required by I.R.C.P. 4(a)(2).

[4] The Vasa N. Bach Family Trust was defaulted for failure to appear.

[5] It is assumed that Broughton answered. Her answer appears nowhere in the record, but she was never defaulted and judgment was entered in her favor.

3

contract in which she agreed to pay a total of $120,000.00 to the Harrops in order to obtain a one-half interest in 80 acres of an original 160-acre parcel. Targhee would obtain the other one-half interest. Unbeknownst to Miller, Bach arranged to pay the Harrops $105,000.00 to convey the 80 acres to Targhee and Miller and have them refund the remaining $15,000.00 of Miller's money to Bach. As a result of subsequent litigation on the contract, Bach and Miller also received the deed to an access strip of approximately 6.63 acres along the north of the eighty acre parcel. Then, in September 1997, the district court quieted title to the eastern-most 80 acres (less the access strip) in the Harrops. Title to the western half of the remaining 80 acres and the access strip were quieted in Miller, while title to the eastern half of the 80 was quieted in Bach. As a part of a settlement agreement, Miller and Bach agreed to share an undivided one-half interest in the 6.63-acre access strip and in another 3.3-acre access strip.[6] The parties also granted each other reciprocal easements for access.

Bach sought to quiet title to a second parcel of 8.5 acres in which he held an undivided one-half interest as a tenant in common with respondent Wayne Dawson. Bach sought to quiet title in a third parcel of 33 acres, known as the "Drawknife Property," in which he held an undivided one-third interest as a tenant in common with Jack McLean and Mark Liponis, who each claimed a one-third interest. Bach also sought to quiet title to a fourth property of 40 acres, known as the "Peacock Property," in which he claimed an undivided one-fourth interest, with respondents McLean, Dawson, and Bach's sister and brother-in-law, Diane and Milan Cheyovich through the Cheyovich Family Trust, also claiming one-fourth interests as tenants in common.

Additionally, Bach sought to quiet title to a 1-acre parcel with a house located at 195 North Highway 33 in Driggs. The property was conveyed to the Targhee Power Emporium by Layne and Cindy Price in 1992. Subsequently, the Internal Revenue Service recorded federal tax liens against the property for $96,000 in delinquent federal tax owed by Targhee Powder Emporium for tax years 1990 through 1993. The Internal Revenue Service sold the parcel to Scona, an entity controlled by respondent Harris, at a tax sale on August 5, 1997, conveying the property to Scona by quitclaim deed in 1998. Bach challenged the sale in state and federal court as being in violation of the automatic stay in his chapter 13 bankruptcy case, which was filed on August 4, 1997. Two federal actions brought by Bach were dismissed for his failure to file an

---

[6] Additionally, Miller, Bach, and Targhee released all claims they had against each other.

4

adequate complaint and the state court quieted title in Scona after Bach defaulted. Subsequently, Scona conveyed the property to respondents Bret and Deena Hill.

The remainder of Bach's claims stem from clashes he had with neighboring landowners and other Teton County residents. Bach alleges that most of the respondents joined together in a concerted action to remove him from Teton County, taking such actions as threatening him with physical harm, destroying his personal property, stealing his personal property,[7] damaging and trespassing on his real property, misappropriating funds through the formation of corporate entities, misappropriating his real property by issuing fraudulent deeds, abusing legal process as a means of harassment, and harassing him on the basis of his Montenegrin heritage. The bulk of these claims were dismissed on summary judgment or motions to dismiss by the non-defaulted respondents, either for failure to state a claim on which relief could be granted, lack of evidence, or on issue and claim preclusion grounds.

Trial was held in this matter on Bach's claims against Miller and Broughton and Miller's counterclaims against Bach, resulting in a verdict in Miller and Broughton's favor on all claims asserted by Bach. The court entered a directed verdict for Miller on her breach of fiduciary duty claim, and the jury found for Miller on all remaining counterclaims, with the exception of trespass, and awarded her $132,456.72 in damages. The district court also quieted title in Miller to the 87-acre parcel. Bach made multiple post-trial motions that were denied. After the first denial of post-trial motions and the entry of findings of fact, Bach sought to have Judge St. Clair disqualified for bias under I.R.C.P. 40(d)(2). Judge St. Clair denied this motion as well, making detailed findings demonstrating why recusal was not warranted. Despite these denials, Bach continued to argue the post-trial motions and disqualification issue through the remaining proceedings. Although a trial was held, the vast majority of the record is comprised of various motions filed by the parties, and the grant or denial of these motions constitutes the majority of Bach's bases for appeal.[8]

---

[7] This claim is based in part on the raids described above and in part on actions taken by McLean. McLean withdrew $15,000 from a bank account he co-owned with Bach and Liponis. Bach deposited the $15,000 into the account, which was used to pay expenses associated with the property jointly owned by them. McLean's attorney, Woelk, initially indicated that the money would be returned to Bach; however, it was deposited with the clerk of court in a separate action.

[8] Miller's counterclaim against Bach was already heard on appeal by this Court in Docket No. 31658, in which this Court determined that Bach was not entitled to restitution for improvements he made on property that was awarded to Miller by the district court because, by virtue of his fraud, those improvements had not been made in good faith. *Bach v. Miller*, 144 Idaho 142, 158 P.3d 305 (2007).

Respondent Woelk, Miller and McLean's attorney in prior actions, as well as Miller's in this one,[9] was added as a defendant when Bach amended his complaint. Subsequently, Woelk filed multiple motions for summary judgment, and was granted summary judgment on the majority of the claims asserted against him, with the remaining claims set for a separate trial. However, prior to trial, as the result of a judgment obtained in another action against Bach, Woelk was able to levy upon and acquire Bach's causes of action against him in this matter at a sheriff's sale. After this purchase, Woelk was then substituted for Bach as plaintiff under I.R.C.P. 25(c) and stipulated to the dismissal of the claims against himself. Based on the stipulation, the court dismissed the remaining claims against Woelk.

Respondents Bret and Deena Hill answered, were defaulted, had default set aside, and the bulk of the claims against them were dismissed on summary judgment. The court determined that Bach had presented no admissible evidence or alleged sufficient facts to show that the Hills were liable on any of the counts asserted against them, and that the bankruptcy stay had not invalidated the sale of the 1-acre parcel they purchased from Scona. The only count asserted against the Hills that was not dismissed was the quiet title action with respect to the 8.5-acre parcel. The court quieted title in the 8.5-acre parcel in Bach, disposing of the last of the claims against the Hills. The Hills were also awarded attorney fees under Idaho Code section 12-121.

Respondents Hamblin and Nickell answered and were both granted summary judgment on all claims, with the exception of the quiet-title claims. These claims were later dismissed after Hamblin and Nickell filed disclaimers of interest in the real property at issue. Hamblin was also awarded attorney fees under Idaho Code section 12-121. Finally, respondents Dawson, Harris, Scona, Lyle, Oleson, Fitzgerald, and McLean were defaulted in this matter. Although they made multiple attempts to set aside default, they were unsuccessful and the district court held a hearing to determine the amount of damages to be entered against each of them. Judgment was entered against each of them.[10]

The district court entered final judgment in this matter on February 11, 2005. The final judgment contained a permanent injunction, enjoining the respondents from entering any of the

---

[9] Bach unsuccessfully sought to have Woelk disqualified as Miller's counsel in this action because of an alleged attorney-client relationship formed between Bach and Woelk while Bach was doing paralegal work for Woelk. The court denied this motion, finding no attorney-client relationship between the two.

[10] A separate appeal on the validity of the default and the damage award proceeded as a companion case to this matter as to all respondents in default but Dawson. This Court affirmed the default judgment against those parties. *Bach v. Miller*, No. 31716, 2010 WL 323536 (January 29, 2010).

property in which Bach had an interest. Bach filed a timely notice of appeal, asserting that the all orders and rulings unfavorable to him must be reversed because the court erred in: (1) refusing to enter a permanent injunction at the outset of this matter; (2) granting respondents' motions to dismiss, for partial summary judgment, and for attorney fees and costs, (3) refusing to disqualify Woelk as Miller's counsel; (4) denying Bach's motions for summary judgment; (5) the formulation of the jury instructions and special verdict form; (6) entering inadequate findings of fact and conclusions of law; (7) refusing to recuse Judge St. Clair; and (8) failing to award Bach adequate damages.

## II.
## Issues Presented on Appeal

The following issues are considered on this appeal: (1) whether the bulk of Bach's claims are preserved as a result of his failure to comply with I.A.R. 35(a)(6); (2) whether Judge St. Clair should have recused himself; (3) whether Bach's bankruptcy affected various claims in this matter; (4) whether Bach may appeal the denial of his summary judgment motions; (5) whether the district court properly allowed the jury to issue an advisory verdict in Miller's quiet title action; (6) whether the district court erred in refusing to allow Bach's punitive damage claims; and (7) whether the respondents are entitled to attorney fees on appeal.

## III.
## Discussion

## A.
## Waiver of Issues on Appeal

The bulk of Bach's claims on appeal will not be considered by the Court because Bach has failed to support them with relevant argument and authority. We will not consider an issue not "supported by argument and authority in the opening brief." *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *see also* Idaho App. R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court. *Inama v. Boise County ex rel. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003) (refusing to address a constitutional

takings issue when the issue was not supported by legal authority and was only mentioned in passing).

Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. *Randall v. Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975). A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. *Michael v. Zehm*, 74 Idaho 442, 445, 263 P.2d 990, 993 (1953). This Court will not search the record on appeal for error. *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003). Consequently, to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

In *Michael*, the Court refused to consider two assignments of error that were "in general terms and [did] not in any respect point out wherein any of the findings or the judgment are erroneous, contrary to law, or not supported by the evidence." 74 Idaho at 445, 263 P.2d at 993. The Court also found fault with the fact that "[t]he brief contain[ed] neither citation of authority nor argument in support of" either assignment of error. *Id.* Similarly, in *Suitts*, the appellant set forth eleven assignments of error, along with a blanket statement that time constraints did not allow her to formulate argument supporting them. 141 Idaho at 708, 117 P.3d at 122. We refused to consider the arguments unsupported by authority, even when authority was later presented in the reply brief. *Id.*

Bach sets forth eleven issues on appeal, along with the blanket statement that he incorporates all argument and authority cited for each issue to every other issue because of the unique and overlapping nature of this case. Because of Bach's convoluted briefing, it is not easy to follow his arguments or to discern how they might be legally supported. The issues we are considering on appeal are those listed in Part II, most of which serve as recurring themes throughout his briefing. That does not necessarily mean that the arguments we address were presented in a cogent manner but merely that they were asserted to the extent that the Court deemed them to have been marginally raised. The remainder of the issues, which we have not addressed, were so lacking in coherence, citations to the record, citations of applicable authority, or comprehensible argument that we simply will not consider them.

**B.**
**Judicial Bias and Recusal**

Although Bach does cite some authority that could theoretically support an argument for judicial recusal for bias or prejudice, that authority is only cited in passing and its holding is contrary to Bach's contentions in this case. Bach cites to the syllabus of *Liteky v. United States*, a U.S. Supreme Court case interpreting federal judicial recusal statutes, for the proposition that the record in this matter demonstrates pervasive bias on the part of Judge St. Clair sufficient to require his recusal. 510 U.S. 540 (1994). Bach's argument demonstrates a misunderstanding of the holding in *Liteky*. The appellant in *Liteky* argued that his conviction for willful destruction of property should be reversed because comments made by the judge indicated the judge was biased. *Id.* at 542. Specifically, the appellant alleged that the judge showed animosity toward him by admonishing him to answer questions as they were posed, reminding him that he was not making a speech in a political forum, interrupting the closing argument of a co-defendant to admonish him to cease the introduction of new facts, and handing down what was characterized as an excessive sentence. *Id.* at 542–43. The judge denied a motion for recusal, noting that "matters arising from judicial proceedings were not a proper basis for recusal." *Id.* at 543.

The *Liteky* Court rejected the appellant's arguments, finding that any hostility that was displayed toward the defendant was not improper bias or prejudice because it was not "so extreme as to display clear inability to render fair judgment," but was merely a normal predisposition that may arise in the course of a case. *Id.* at 550–52. The Court noted:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for his bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to the completion of the judge's task. . . . "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions."

*Id.* at 550–51 (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)). Consequently, unless there is a demonstration of "pervasive bias" derived either from an extrajudicial source or facts and events occurring at trial, there is no basis for judicial recusal. *Id.* at 551. The Court went on to find:

It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion. . . . and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . . Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Id.* at 555–56. Accordingly, as *Liteky* demonstrates, the standard for recusal of a judge, based simply on information that he has learned in the course of judicial proceedings, is extremely high.

Bach has failed to meet the *Liteky* standard. Bach provides no other legal authority on judicial bias, nor does he make any citations to the record that evidence any specific bias or prejudice by Judge St. Clair. Instead, Bach attacks Judge St. Clair's findings of fact, his rulings on various motions, and his performance as trier of fact on equitable issues. One of the few pieces of evidence that Bach does cite of Judge St. Clair's purported bias is the judge's statement that he had made a determination on the credibility of the parties based on an advisory jury verdict, the evidence presented, and the testimony given by each party. This is precisely the kind of determination that the *Liteky* Court notes should be made in a bench trial and will not serve as sufficient evidence of pervasive bias. Other than his attack on St. Clair's findings, Bach argues that the entire record reflects pervasive bias. Bach's other claims against Judge St. Clair simply constitute borderline-offensive ravings concerning the judge's suspected affiliation with the Church of Jesus Christ of Latter Day Saints, an affiliation that Judge St. Clair expressly disaffirmed in his order denying Bach's motion for recusal.[11]

Further, viewing the record as a whole, when Bach presented a meritorious claim, Judge St. Clair gave him a favorable ruling. Judge St. Clair granted Bach a preliminary injunction, refused to set aside default against several respondents, refused to grant summary judgment in favor of the respondents on several issues, sustained many of Bach's objections during hearings

---

[11] It is interesting to note that, prior to the jury verdict and bench trial of Bach and Miller's claims against each other, he actually opposed an attempt to recuse Judge St. Clair from the proceedings.

and trial, and refused to strike Bach's pleadings and issue sanctions against him when there were arguably ample grounds to do so. If anything, Judge St. Clair should be commended for his handling of this matter. Given the animosity between the parties, the confusing nature of Bach's court filings, and the multiplicity of the proceedings, Judge St. Clair's actions in this matter were exemplary. As evidenced by the thirty-seven memorandum decisions issued in this case, Judge St. Clair carefully considered each motion put before him and issued a ruling stating his reasons for granting or denying those motions. In absence of these decisions, review of this complex case would be much more difficult. Accordingly, Bach's contentions that all orders not favorable to him should be overturned because of Judge St. Clair's bias are without merit, they do not constitute argument or authority sufficient to support his various assignments of error, and they certainly provide no basis for Judge St. Clair's disqualification.

## C.
### Bach's Bankruptcy

Bach asserts that his chapter 13 bankruptcy proceeding impacted several claims in the present action and that the judge erred in failing to so find. His principal assertion is that the district court should not have granted relief to Miller on her alternate claims for damages or quiet title related to the 87 acres because any claims that Miller had against him were discharged in his bankruptcy. Second, he contends that the IRS sale of the 1-acre parcel to Scona was void because it occurred the day after he filed his bankruptcy and thus was conducted in violation of the automatic stay. Although Bach makes passing mention to the 8.5-acre parcel in his brief, he does not explain how that is relevant to his appeal, and makes no argument as to what, if any, relief he seeks with regard to that property. Therefore, we do not address it.

In support of his claims that Miller's causes of action against him were discharged in his bankruptcy, Bach cites three cases: *In re Sasson*, 424 F.3d 864 (9th Cir. 2005); *Catalano v. Commissioner*, 279 F.3d 682 (9th Cir. 2002); and *In re Cogliano*, 355 B.R. 792 (9th Cir. B.A.P. 2006). Although it is unclear from his briefing why Bach cites *Sasson*, the case stands for the proposition that claims discharged in bankruptcy cannot be pursued in a state court action.[12] In fact, *Sasson* holds that the bankruptcy court may retain jurisdiction over some claims "related to" bankruptcy after the case is closed when those claims have a "close nexus" to the bankruptcy

---

[12] Bach used *Sasson* as a citation for the following sentence: "BACH paid all his creditors, got back money, Miller's claims were all discharged and she had no claims in this action to assert against BACH, nor Dawson, McLean, Harris, and Liponis, also discharged."

11

proceedings. 424 F.3d at 869. This matter was not initiated until after Bach's bankruptcy was closed. As a result, Bach's citation to *Sasson* provides no support for his argument because he has made no attempt to demonstrate that the claims in this matter have any relation to his bankruptcy, let alone the close nexus required for preclusion of state court jurisdiction.

Bach appears to rely on *Catalano* for the idea that all interests included in a chapter 13 bankruptcy estate are automatically returned to the debtor on discharge. Although this is an accurate statement of bankruptcy law, the proposition is mentioned merely as dicta in *Catalano*, which deals with the issue of whether lifting of the automatic stay constitutes an abandonment of property of the bankruptcy estate, passing it back to the debtor. 279 F.3d at 687–88. While this proposition of law may potentially support Bach's claim, he has made no citation to the record demonstrating that he had an ownership interest in the property in question at the time he filed bankruptcy, that the property in question was part of the chapter 13 plan or declared as an asset of the estate, or that those who had an interest in the property were given proper notice of the plan and discharged by the bankruptcy court.

Further, Bach's reliance on *Catalano* is partially undermined by his citation to *Cogliano*. Bach quotes *Cogliano* for the proposition that a debtor's property interest in a trust with an anti-alienation provision does not become part of the bankruptcy estate. 355 B.R. at 801. This authority is of questionable applicability because the only trust at issue in this matter never held most of the property in question, and Bach attempted to disclaim any interest the trust had in the property through his position as trustee. The *Cogliano* holding, if applicable, would mean that some of the Targhee property was not an asset of the bankruptcy estate subject to discharge under Bach's claims that Targhee and its holdings were property of his mother's trust. Although unclear given Bach's conflicting statements on this subject, one of his major contentions concerning his assumed business name, Targhee Powder Emporium, was that it was a sole-proprietorship held as an asset of the Vasa N. Bach Family Trust. Bach's statements concerning the trust's ownership of Targhee Power Emporium are misleading at best. The trust instrument that Bach disclosed as a trial exhibit indicates that the 8.5-acre parcel that Bach holds as a tenant in common with Dawson is the only asset in the name of the Targhee Power Emporium that was owned by the trust. There is no other mention of the Targhee Power Emporium as an asset of the trust. Further, even if the Targhee Powder Emporium were an asset of the trust, Bach's attempted transfer of the assets of the Targhee Power Emporium to himself, although a breach of virtually

12

every duty owed to the beneficiaries of the trust by Bach, would place the property within the bankruptcy estate because the bankruptcy plan had not yet been discharged at the time of transfer. *See* 11 U.S.C. § 1306(a) ("Property of the estate includes . . . all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title.").

Despite Bach's cited authority, bankruptcy law and the current state of the record are fatal to his allegations regarding Miller's claims. In order for a claim to be discharged in chapter 13 bankruptcy, 11 U.S.C. § 1328 requires that the chapter 13 plan make a provision for the claim, meaning that the plan must "deal with [the claim] or refer to it." *Ellett v. Stanislaus*, 506 F.3d 774, 777 (9th Cir. 2007) (quoting *Matter of Gregory*, 705 F.2d 1118, 1122 (9th Cir. 1983)). "[A] claim cannot be considered to have been provided for by the plan if a creditor does not receive proper notice of the proceedings." *Id.* (quoting *In re Hairopoulos,* 118 F.3d 1240, 1244 (8th Cir. 1997)). This requirement of basic notice and provision for a claim in the plan is required in order to afford creditors notice and an opportunity to be heard. *Id.*

As the district court found, Miller's claims against Bach were not discharged by his chapter 13 plan. Under *Ellett*, in order for Bach's claims to be discharged, the subject properties must have been provided for in the plan and Miller must have received notice of the bankruptcy, identifying the claim and the debtor. Despite Bach's arguments that Miller was aware he and Targhee Power Emporium were one and the same at the time of his bankruptcy filing and that she had notice of his bankruptcy, there is no indication that Bach listed any of the properties purportedly held by Targhee as assets of the estate, that the properties were dealt with in the chapter 13 plan, or that Targhee Powder Emporium was to be considered a debtor along with Bach. Further, the property interests at issue were held under the name Targhee Power Emporium rather than Bach's name at the time of his bankruptcy filing, and it does not appear that he ever recorded or made any public record of the purported transfer of Targhee's assets to himself or of his affiliation with Targhee during the bankruptcy. Consequently, this confluence of factors is sufficient to rob Miller of the required notice that her potential claims against Bach were the subject of a chapter 13 plan. Thus, her claims were not discharged, as the district court correctly concluded.

Bach also argues that the IRS sale of the 1-acre parcel to Scona, Inc., which occurred on April 5, 1997, was void because it violated the automatic stay in his chapter 13 bankruptcy

13

petition, which was filed the preceding day. Although Bach sought no relief from the bankruptcy court for the purported stay violation and did not list the property as an asset of the bankruptcy estate in his filing, he did seek to have the tax sale declared void in an action in the U.S. District Court for the District of Idaho, *Morgan v. Federal Agencies and Officers of the I.R.S.*, Case No. CV-98-383-E-BLW. All claims in that action were dismissed with prejudice pursuant to Federal Rule of Civil Procedure (F.R.C.P.) 41 because of failure to file a complaint that complied with the F.R.C.P. Title to the parcel was also quieted in Scona in Teton County Case No. CV-98-025, in which Bach failed to appear, resulting in a default judgment against him. Bach sought to avoid the I.R.S. sale in another federal action in Idaho (Case No. 01-266-E-TGN), which was also dismissed for failure to file a complaint in compliance with the F.R.C.P. As a result of these prior actions, and his failure to file notice of his claim in the bankruptcy court, the respondents contend that Bach is barred from seeking a declaration that the I.R.S. sale to Scona was void under the doctrines of collateral estoppel and judicial estoppel. While both doctrines would apply to bar Bach's claims,[13] we will only address the former, as it was the doctrine applied by the district court.

The district court determined that the issue of void transfer was barred from consideration in this action by the doctrine of collateral estoppel. Whether an issue is barred by collateral estoppel or issue preclusion is a question of law over which this Court exercises free review. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007). Issue preclusion protects a party from litigating an identical issue with the same party or his privy. *Id.* at 123, 157 P.3d at 617. Five factors are required in order for an action to be barred on the basis of issue preclusion: "(1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation." *Id.*

---

[13] Bach failed to list or disclose the property in his bankruptcy schedules and, thus, the bankruptcy court had no inkling that Bach had or claimed any interest in the property. Under our holding in *A&J Constr. Co. v. Wood*, 141 Idaho 682, 685–86, 116 P.3d 12, 15–16 (2005), Bach is judicially estopped from pursuing claims in or to the property in state court.

In this matter, Bach's claim that the sale to Scona, and subsequently to the Hills, is void is barred by collateral estoppel based on Bach's prior actions. Bach's claims that the IRS sale was invalid were dismissed with prejudice in the federal actions. Although the claims were dismissed for failure to file a complaint that conformed to the F.R.C.P., this does not preclude a finding of collateral estoppel. Bach had a full and fair opportunity to litigate the issue despite the dismissal because he was given the opportunity to amend his complaint so that it complied with the F.R.C.P. and he failed to do so. We have held that a party had a full and fair opportunity to litigate where an argument could have been made in a prior proceeding. *Rodriguez v. Dep't. of Corr.*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001). Bach also had a full opportunity to litigate the matter in the state court action because a default will not bar a finding of opportunity to litigate *Waller v. State of Idaho, Dep't of Health & Welfare*, 146 Idaho 234, 238, 192 P.3d 1058, 1062 (2008).

Further, the other elements of collateral estoppel are met. The issue decided in the federal and state court actions, whether the sale was void as a result of the automatic stay, are identical to the issue presented here. The element of actual litigation in the prior action is met because, despite the fact that there was a summary dismissal of both actions, the cause of action was disposed of and there was an opportunity to provide sufficient facts to prove that the sale was void. Both of the prior matters resulted in a final judgment. The federal action resulted in a dismissal of Bach's claims with prejudice, preventing subsequent relitigation of those claims, and the state court action resulted in a quiet title decree in favor of Scona. Finally, Bach has been a party to all prior suits. Accordingly, Bach has already asserted this claim and it was fully decided so he is not entitled to seek relief on the same claim in this case. Therefore, the district court properly found Bach's claim regarding the 1-acre parcel to be barred by the doctrine of collateral estoppel.

### D.
### Denial of Bach's Summary Judgment Motions

Bach also attempts to appeal the denial of his motions for summary judgment. I.A.R. 11 provides that, in civil actions, "[j]udgments, orders and decrees which are final" are appealable. Idaho App. R. 11. "An order denying summary judgment is neither a final order that can be directly appealed, nor is it an order that can be reviewed on an appeal from a final judgment in

15

the action." *Courtney v. Big O Tires, Inc.*, 139 Idaho 821, 823, 87 P.3d 930, 932 (2003). Consequently, this Court will not review the denial of Bach's motions for summary judgment.

## E.
## Jury Verdict on Equitable Claims

Bach argues that the jury verdict in Miller's favor must be reversed because equitable issues were improperly submitted to the jury and Judge St. Clair improperly relied on the jury verdict. Although not framed in this fashion by Bach, this is essentially a request for new trial and was presented by Bach in the district court as grounds for new trial. The decision whether to grant a new trial pursuant to I.R.C.P. 59(a)(1) because of irregularities in the proceedings preventing either party from having a fair trial rests within the sound discretion of the district court and will not be overturned on appeal absent a showing of abuse of that discretion. *Cramer v. Slater*, 146 Idaho 868, 880–81 204 P.3d 508, 520–21 (2009). This Court applies a three-part test for determining abuse of discretion, examining whether the district court: (1) correctly understood the issue to be one of discretion; (2) acted within the outer bounds of its discretion; and (3) reached its decision on the motion before it through the exercise of reason. *Crowley v. Critchfield*, 145 Idaho 509, 512, 181 P.3d 435, 438 (2007).

The district court did not abuse its discretion in refusing to grant Bach a new trial. As evidenced by cases cited in Bach's own brief, while there is no right to a jury trial in an equitable action, empanelling a jury to make advisory findings of fact on equitable issues is not prohibited. *Fairview Inv. Co. v. Lamberson*, 25 Idaho 72, 80, 136 P. 606, 614 (1913). Nearly a century ago in *Lamberson*, this Court noted "in most all equity cases, that there are some questions of fact *which a court may properly and sometimes wisely submit to a jury*," clearly indicating that an advisory verdict is not only acceptable in equitable cases, but often well-advised. *Id.* (emphasis added). The Court went on to note that the decision whether to submit an equitable issue to the jury rested within the discretion of the district court. *Id.* Bach cites *Lamberson* in the section of his brief stating that there is no right to jury trial in quiet title actions, ignoring the part of the holding unfavorable to his position. Bach cites no authority to indicate that empanelling a jury in an equitable case is improper, nor does he demonstrate any prejudice from allowing the jury to hear his claims, other than the fact that the jury did not find in his favor. This, without more, does not demonstrate that the district court abused its discretion.

Where an advisory verdict is issued on equitable claims, the trial judge is still required to make independent findings of fact and conclusions of law on the equitable claims before him, not solely relying on the jury's findings. *See* Idaho R. Civ. P. 52(a); *Vanderford Co. v. Knudson*, 144 Idaho 547, 553, 165 P.3d 261, 267 (2007). The district court made the required findings in this case. While Bach argues that these findings are in error, he cites to no support in the record for this argument, other than pointing out an inadvertently omitted page in the originally filed findings. Further, the purpose of I.R.C.P. 52(a) is to accord this Court a clear record of the findings on which the district court's decision was based. *Id.* at 554, 165 P.3d at 268. The findings made in this matter fulfill this purpose, clearly demonstrating the bases for the district court's decision. Bach, rather than attacking the contents of the findings or demonstrating a basis for error, simply asks us to reevaluate the record and reach our own conclusions, an improper exercise for this Court. Accordingly, there has been no showing that the district court abused its discretion in submitting the equitable claims to the jury nor has it been shown that the district court failed to issue proper findings on the equitable claims; thus, a new trial is not warranted on Bach's claims against Miller and the judgment quieting title in Miller is affirmed.

## F.
## Adequacy of Damages

Bach contends that the district court erred in failing to award him adequate damages on the default judgments entered against respondents Harris, Scona, Lyle, Fitzgerald, Oleson, McLean, and Dawson. However, as noted above, Bach was required to provide specific argument, authority, and citation to the record in support of his challenges to the damage award pursuant to I.A.R. 35(a)(6). Bach only managed to do that with respect to allowance of punitive damages. Bach provided no citation to authority to demonstrate that the amount of damages awarded was in error, failing even to provide the governing standard for review of damage awards. Consequently, only Bach's contention that punitive damages should have been awarded will be addressed.

Bach contends that the district court erred in failing to award punitive damages despite the fact they were pleaded in the First Amended Complaint. Bach argues that he was entitled to amend his pleading once as a matter of right because he amended the complaint before any responsive pleading was served. *See* Idaho R. Civ. P. 15(a) (allowing amendment of pleadings once as a matter of right before a responsive pleading is served); *E. Idaho Econ. Dev. Council v.*

17

*Lockwood*, 139 Idaho 492, 496, 80 P.3d 1093, 1097 (2003) (noting that a party may amend their pleadings once as a matter of course at any time before a responsive pleading is served).

What Bach overlooks is Idaho Code section 6-1604, which does not allow punitive damages to be added to a pleading without leave of the district court. I.C. § 6-1604(2). In order to add a claim for punitive damages, the moving party must demonstrate to the court in a pretrial hearing that there is a reasonable likelihood of proving facts at trial sufficient to support a punitive damage award. I.C. § 6-1604(2). In absence of leave of the district court, a prayer for punitive damages may not be added to an amended complaint. I.C. § 6-1604(2). This proposition was pointed out to Bach by the district court, which noted that if Bach wished to amend to add punitive damages, he would have to file a second amended complaint, allowing the defaulted defendants another opportunity to answer. Bach chose not to do so. Consequently, although Bach was entitled to amend his complaint, he was not granted leave to add a prayer for punitive damages; accordingly, the district court properly refused to award them.

## G.
## Attorney Fees on Appeal

Respondents Miller, Hamblin, Woelk, Dawson, Nickell, and the Hills request attorney fees on appeal pursuant to Idaho Code section 12-121 and I.A.R. 41. Respondents Harris, Scona, Lyle, Fitzgerald, Olson, and McLean have not requested fees on appeal. Idaho Code section 12-121 allows the award of attorney fees in a civil action if the appeal merely invites the Court to second guess the findings of the lower court. *Crowley v. Critchfield*, 145 Idaho 509, 514, 181 P.3d 435, 440 (2007). Attorney fees may also be awarded under section 12-121 "if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Id.* The award of fees under section 12-121 is within this Court's discretion. *Id.*

Attorney fees will be awarded against Bach. Despite the fact that he presented three lengthy briefs, Bach has done nothing more than ask the Court to second guess the findings of the district court and he has provided no argument or authority on which reversal of the district court could be based. Other than Bach's abiding belief that he has been the subject of a conspiracy and is entitled to millions of dollars in damages as a result, there does not appear to have been any basis for this appeal. Because the appeal was brought unreasonably, we award fees to the above-named respondents under Idaho Code section 12-121.

## IV.
## Conclusion

Because the majority of the issues presented by Bach were not properly preserved for appeal as a result of his failure to comply with the Idaho Appellate Rules and the remaining assignments of error are without merit, the challenged orders and the final judgment are affirmed. Further, because Bach brought this appeal frivolously, respondents Miller, Hamblin, Woelk, Dawson, Nickell, and the Hills are awarded their attorney fees on appeal.  All respondents are awarded their costs incurred on appeal.


Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.