**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47955**

| | | |
|---|---|---|
| In the Interest of Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, Department of Health and Welfare, | ) ) | Filed: June 30, 2020 |
| | ) | |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2020-18), | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Laurie A. Fortier, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Anthony Geddes, Ada County Public Defender; Karen L. Jennings, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Madison N. Miles, Deputy Attorney General, Boise, for respondent.
_____

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. She asserts the magistrate court erred in declining to give her more time to complete her case plan, finding she abused and neglected her child, and finding it was in the best interests of the child to terminate her parental rights. The magistrate court's judgment terminating Doe's parental rights is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the biological parent of S.M., a minor child. Doe and S.M. had been staying with Doe's boyfriend. Upon learning that the boyfriend had sexually abused S.M., S.M. was taken to

1

CARES, which recommended she receive counseling for the sexual abuse. It was also recommended that S.M. receive medical care to confirm her initial diagnosis of celiac disease. Doe and S.M. moved to the City Light shelter because Doe had no income. Shelter staff observed Doe repeatedly engaging in verbally aggressive and physical altercations with S.M. Doe's behavior concerned the shelter staff, as the staff did not believe S.M.'s behavior warranted the discipline she received. Doe was not receptive or responsive to the staff's attempts to intervene in or assist with the circumstances causing the verbal and physical altercations. The shelter staff also tried to talk to Doe about S.M.'s small size and how little food she was eating. Doe did not provide any information to the staff at the shelter that S.M. needed nutrition consistent with a diagnosis of celiac disease.

In November 2018, someone was concerned about Doe's interaction with S.M. and video recorded Doe and S.M. in a parking lot near the shelter. Doe was yelling at S.M. to get up because S.M. would not get off the ground. Doe then hit her cane on the ground near S.M., "swatted" S.M. on the backside, and made S.M. walk to a truck. Doe "tossed" S.M. in the truck by S.M.'s arm and then repeatedly struck S.M. Law enforcement was called, and when interviewed by a police officer, Doe admitted hitting S.M. Doe also acknowledged she had a difficult time controlling S.M. and that hitting her was the only method that worked for discipline. Based on a review of the video, Doe's statements, and reports of prior physical abuse, S.M. was declared in imminent danger.

Doe waived her right to have a shelter care hearing and stipulated to S.M. being placed in the custody of the Department of Health and Welfare (Department). Doe also stipulated to the terms and conditions of the case plan. Doe's case plan required her to identify S.M.'s needs and provide care that addressed those needs, which included: participating in a protective parenting course and Parent Child Interaction Therapy; increasing her knowledge of celiac disease and abiding by any doctors' recommendations; demonstrating an ability to provide financial support; maintaining a safe and stable home and having no individual who had not been approved by the Department stay overnight or longer; applying for social security disability; ensuring S.M.'s needs were met; and attending S.M.'s physical, dental, developmental, and mental health appointments. Doe was also required to adequately address her own past trauma and/or mental health issues by participating in a psychological evaluation, individual counseling sessions, and a

medical examination, as well as following the recommendations and signing the releases of information to allow the Department to obtain the relevant records.

At the six-month review hearing in May 2019, the magistrate court granted Doe an extended home visit with S.M. On July 25, 2019, following the termination of the extended home visit, the magistrate court ordered S.M. to return to Doe's care under protective supervision of the Department. During the two-week extended visit and the protective supervision period, S.M. lost enough weight that medical staff was concerned. Doe was also regressing in the parenting skills she had learned, and she left S.M. alone with an individual believed to have previously abused Doe. On August 12, 2019, the magistrate court ordered S.M. removed from protective supervision, and the next day, the court ordered S.M. returned to the custody of the Department. S.M. was returned to foster care where she gained back the weight she had lost.

The Department filed a motion to terminate Doe's parental rights because Doe had not made sufficient progress on her case plan and was regressing in the progress she had initially made. The magistrate court ordered the permanency plan be modified from reunification to termination of Doe's parental rights and adoption of S.M. A permanency hearing was held in November 2019. The magistrate court found that Doe had abused and neglected S.M. and termination of Doe's parental rights was in the best interests of S.M. Doe timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and

3

convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Doe makes two arguments on appeal. First, Doe asserts that when the magistrate court approved the case plan change from reunification to termination of parental rights in November 2019, and then terminated parental rights on April 9, 2020, the court gave Doe insufficient time to demonstrate how she could incorporate what she learned into taking care of S.M. Second, Doe claims the magistrate court's findings that Doe neglected S.M. and that termination of Doe's

4

parental rights was in the best interests of S.M. were not based on substantial and competent evidence.

**A.     The Magistrate Court Gave Doe Sufficient Time to Comply With the Case Plan**

Although Doe asserts the magistrate court did not give her sufficient time to comply with the case plan and terminated her parental rights approximately five months after the goal of the case plan changed, Doe fails to establish error.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b). The magistrate court found that Doe had neglected S.M.; those findings are summarized below.

Shortly after S.M. was declared in imminent danger, S.M. was taken to CARES for a medical examination. There was some bruising on S.M. that concerned the medical staff, as it did not appear to be accidental. Additionally, the child was significantly underweight. S.M. was diagnosed with poor nutrition and/or failure to thrive in February 2018 (before coming into the Department's custody) and again in the summer of 2019, following an extended home visit. Doe explained S.M.'s small size was due to S.M. having food allergies that were not accommodated by either the shelter or S.M.'s school. However, when in foster care, S.M. gained four pounds in four months, even while eating gluten. In July 2019, while on the extended home visit, S.M. lost two pounds (approximately five percent of her body weight). Approximately two weeks later, S.M. had lost another seven ounces and S.M. was again diagnosed with failure to thrive. Doe was unconcerned about S.M.'s latest weight loss, claiming it was due to celiac disease, summer heat, bloating and inflammation, and not caloric deficiency. Doe was unwilling to listen to or accept the medical advice, finding her own opinion to be more informed. However, once S.M. was placed back in foster care, she again gained weight. While Doe learned more about celiac disease, she was resistant to the doctor's suggestions, did not abide by the doctor's recommendations, and failed to ensure S.M.'s continued weight gain during either the extended home visit or the period of protective supervision.

6

Based on the shelter staff's concerns about Doe's parenting and Doe's unwillingness to follow other shelter rules, Doe was asked to leave the City Light shelter. Thereafter, and through the pendency of the case, Doe resided in a hotel room with a friend, the WCA shelter with multiple roommates, and the Interfaith Sanctuary shelter. She also lived with a physically abusive ex-boyfriend and a roommate, neither of which would be approved by the Department as an appropriate residence for S.M. As a result, the magistrate court found Doe failed to maintain stable housing for herself or S.M. free from individuals who were not or would not be approved by the Department.

During the time Doe lived at the WCA shelter in April 2019, S.M. lived with Doe on a rotating schedule. S.M. would stay with Doe for two days and then would return to foster care for the next three days. This schedule continued until June 7, 2019, when S.M. went to stay with Doe full-time. Doe failed to comply with the established rules at the shelter, such as keeping her room clean and safe for S.M., doing communal chores, and attending counseling. Doe also declined to pursue either employment or disability, despite a referral to vocational rehabilitation and assistance with paperwork. Aside from completing a thirteen-week parenting class and participating in a life skills class, Doe refused to avail herself of classes offered at the shelter. According to shelter staff, Doe lacked motivation to achieve stated goals and objectives and would not follow through on the tasks she began.

Despite Doe being six months into her case plan, WCA staff observed concerning parenting behavior by Doe and the staff intervened on behalf of S.M. three to four times a week. Doe also sought staff assistance multiple times a week when Doe felt she could no longer handle S.M.'s behavior. However, when the staff attempted to assist, Doe became angry and argumentative with the staff, disagreed with the suggestions, and blamed the difficulties on S.M. Ultimately, Doe's refusal to comply with the rules--including leaving S.M. unsupervised with one of Doe's previous abusers--resulted in the WCA shelter terminating Doe's stay.

Although Doe completed the protective parenting plan, she never acknowledged physical abuse of her child, never acknowledged the accuracy of the video recording of the physical abuse, and failed to make progress in many of the areas measured by the program. Moreover, Doe did not demonstrate the skills learned in the class during either the extended home visit or the protective supervision period. Doe did not complete the Parent Child Interaction Therapy because she missed too many sessions, failed to complete the required steps, and had reduced

visitation with S.M. Doe made it clear she did not want to participate in the therapy and she felt the sessions were a waste of her time.

Doe failed to demonstrate she could provide for S.M.'s needs; Doe remained unemployed during the entire child protection case and never presented any verified source of income to the Department. Doe did not apply for Social Security Disability or undergo a medical examination needed for the application. In addition, although Doe obtained a psychological evaluation, her behavior during the evaluation included deception, and thus, made it difficult for an accurate diagnosis and treatment regimen. Ultimately, the magistrate court found that Doe did not complete her case plan because Doe did not complete an appropriate safety plan, did not exhibit the parenting skills she learned, did not internalize advice and direction from doctors, failed to obtain safe and stable housing, and failed to adequately parent S.M.

S.M. came into custody in November 2018. Doe was given extensive services and was making some progress on her case plan. By July 2019, Doe was not engaged in any of her parenting or mental health classes, was residing in a location that was expressly disapproved by the Department as an appropriate home for S.M., was in a relationship that was not protective of S.M., and was failing to address S.M.'s medical issues.

The magistrate court concluded that Doe had sufficient time to demonstrate she could incorporate the relevant skills necessary to allow S.M. to return to her custody. However, the evidence established that Doe was unable to provide for the health and safety of S.M. Doe has not demonstrated what additional skills or assistance she needed or how much more time she needed to demonstrate those skills. Consequently, Doe has failed to establish the magistrate court did not give her sufficient time to complete her case plan.

**B.** **Doe Fails to Establish Error in the Magistrate Court's Findings of Fact or Conclusions of Law**

Doe argues that the magistrate court erred in considering certain evidence at trial, and as a result, the magistrate court's findings of fact were not supported by substantial and competent evidence. Doe has waived her challenges to the evidentiary admissions, as she has failed to either identify the errors or support her arguments with authority and citation to the record. Doe also asserts that the magistrate court erred in concluding that Doe neglected and abused her child and that termination of Doe's parental rights was in the best interests of S.M.

### 1.  Evidentiary challenges and sufficiency of evidence of neglect and abuse

At the termination trial, the State introduced Doe's psychological evaluation completed by Dr. DeLawyer.  Doe argues that Dr. DeLawyer's evaluation "arguably was based in part on alleged facts and hearsay that would not be admissible at trial."  Doe also contends the trial court placed undue weight on the report and should not have considered the report for purposes of termination.  Doe fails to identify those elements of the report with which she takes issue, fails to explain why the remaining parts of the evaluation would not be admissible, and fails to explain how the magistrate court unduly emphasized this evaluation when compared to other evidence.  This Court will not search the record on appeal for error.  Failure to provide adequate citation to the record or to support her arguments with citation to the record results in a waiver of the issue on appeal.  I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."); *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (appellate courts will not consider an issue not supported by argument and authority in opening brief or search appellate record for error).

Similarly, Doe identifies various witnesses who testified at the termination hearing and, in summary fashion, asserts the magistrate court erred in allowing the witnesses to testify.  Doe also alleges the magistrate court erred in allowing instances of opinion or hearsay testimony by various witnesses.  However, Doe does not identify any specific inadmissible testimony.  Moreover, a one-sentence statement claiming error in the admission of testimony is insufficient argument and does not allow this Court to address Doe's claims.  Consequently, Doe has waived her claims of evidentiary error on appeal.  *Bach*, 148 Idaho at 790, 229 P.3d at 1152.

Doe asserts the district court erred in taking judicial notice of the case summary.  Doe's argument on this issue is one sentence:  "The court erred in taking judicial notice of the case summary.  []  *See* Idaho Juvenile Rule 48."  Failure to provide argument and authority results in a waiver of the issue.  Thus, Doe waives this issue on appeal.  *Bach*, 148 Idaho at 790, 229 P.3d at 1152.

As part of the child protection case, Doe executed a release of information so information could be shared among the relevant service providers and the Department.  Doe argues on appeal that the magistrate court erred in determining that the release was a waiver of certain evidentiary privileges, which allowed information to be admitted during the termination trial.  Although Doe

9

cites "Idaho Rule of Evidence 503, 801 et al." she does not explain how those rules stand for the proposition she asserts, and she provides no additional authority for this Court to review. Consequently, Doe has waived this issue on appeal. *Bach*, 148 Idaho at 790, 229 P.3d at 1152.

Doe asserts the magistrate court should not have relied upon the testimony of the social worker, as the social worker was an employee of the Department. Doe provides no authority for this assertion. Doe further asserts the magistrate court's findings were not supported by substantial and competent evidence but does not identify which findings are unsupported. Consequently, Doe has waived this argument on appeal. *See id.*

To the extent Doe's claims of evidentiary error are offered in support of her assertion that the magistrate court lacked substantial and competent evidence to support a finding of neglect and abuse, her claim fails. Not only has Doe failed to show any evidentiary error, she has also failed to show that the evidence cited in support of the magistrate court's finding of neglect and abuse was insufficient. Substantial and competent evidence supports the magistrate court's conclusion that the State proved two statutory grounds for termination--neglect and abuse.

**2. The magistrate court's finding that termination is in the best interests of S.M.**

Doe claims the magistrate court lacked substantial and competent evidence to find that termination of Doe's parental rights was in S.M.'s best interests because Doe and S.M. "were well bonded" and terminating the parental rights can have a negative impact on a child. The magistrate court found that while Doe loved S.M., S.M. was thriving in foster care and needed the "stability and structure she has enjoyed during her time in foster care, which has allowed her to physically grow and progress both emotionally, educationally, and medically." The magistrate court also found:

> It would be detrimental to [S.M.'s] physical, mental and emotional health for her to be returned to the care of [Doe]. Terminating the parent-child relationship between [Doe] and the child will be hard on [S.M.], however the Court concludes that it would not have a damaging emotional effect on the child. The substantial risks of future neglect and abuse to [S.M.] if in [Doe's] care far outweigh the emotional discomfort that [S.M.] may endure as a result of not being able to see [Doe] if her parental rights are terminated. [S.M.] deserves the chance to continue making progress and be adopted by a permanent, stable family.

Doe fails to address which findings were not supported by competent and substantial evidence, and consequently, waives this issue on appeal. *See Bach*, 148 Idaho at 790, 229 P.3d at 1152 (2010).

10

## IV.

## CONCLUSION

The magistrate court did not err in finding that Doe abused and neglected her minor child and that termination of Doe's parental rights was in the best interests of the child. Thus, the magistrate court's judgment terminating Doe's parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.