682 P.2d 1282

David E. DAVIS and Sandra J. Davis, husband and wife, Plaintiffs-Respondents,

v.

Edward J. GAGE and Betty Gage, husband and wife, Defendants-Appellants.

No. 14356.

Court of Appeals of Idaho.

May 16, 1984.

Everett D. Hofmeister, Coeur d'Alene, for defendants-appellants.

Thomas A. Mitchell, Coeur d'Alene, for plaintiffs-respondents.

SWANSTROM, Judge.

This is an appeal from an award of damages in a suit brought by respondents Davises against appellants Gages for breach of a contract relating to the sale of commercial property and for intentional infliction of emotional distress. The district court awarded the Davises nominal damages plus punitive damages for breach of a contractual noncompetition clause and for mental anguish. The district court also awarded the Davises damages for the Gages' wrongful severance of a sewer connection to a drainfield. The Gages appealed. We affirm in part, reverse in part and remand for reconsideration of the amount of punitive damages awarded.

The issues on appeal are whether the award of punitive damages was proper under the circumstances of this case and whether the awards of damages for mental anguish and for the wrongful severance of the sewer connection are supported by the evidence.

In November 1973 the Gages sold the Davises real property located adjacent to Highway 95 near Sandpoint, Idaho. The contract covered a restaurant-tavern and contained a covenant that the Gages would not "in any way" compete with the Davises' business for a period of fifteen years. A series of confrontations between the parties began in the summer of 1974. First, the Gages brought an action to foreclose a deed of trust on the Davises' property. They claimed the Davises had failed to sufficiently insure the premises. The action was later dropped. The Gages then tore down a billboard and appropriated the materials for their own use. This billboard was not on property purchased by the Davises. However, the district court found that it was part of the personal property of the business sold by the Gages to the Davises. It had been used to advertise the restaurant-tavern when the Gages owned it. The Gages also disconnected a drainfield for two septic tanks used by the res-

taurant-tavern. The drainfield and one of the tanks were located on the Gages' property adjacent to the premises sold to the Davises. Finally, the Gages built, equipped and leased a restaurant 200 feet from the Davises' restaurant, in violation of the covenant not to compete.

The Davises filed their suit and the Gages counterclaimed. Both parties sought punitive damages. Trial before the court was held in April 1979. The district court found that the Gages had violated the covenant not to compete and awarded nominal damages, as well as punitive damages, for that breach.[1] The court also awarded damages for mental anguish caused by the Gages' conduct leading up to the suit. Finally, damages for the wrongful severance of the sewer connection were awarded.

## I

The Gages challenge the award of punitive damages on two grounds. First, they argue that an award of punitive damages was not proper under the circumstances of this case. Second, the Gages contend that even if punitive damages were properly awarded, they were excessive.

An award of punitive damages is first within the province of the trier of fact, subject to review for abuse of discretion. *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). That discretion is to be exercised within the "general advisory guidelines" laid down in the past, *see id.* at 905, 665 P.2d at 669, but an award will be sustained only when it is shown that the act was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or a disregard for its likely consequences (in the words of prior cases, with fraud, malice or oppression)." *Linscott v. Rainier National Life Ins. Co.*, 100 Idaho 854, 858, 606 P.2d 958, 962 (1980).

We must now determine whether the district court abused its discretion in this case. It has long been held that punitive damages are not favored in Idaho and should be awarded only within narrow limits. *Gavica v. Hanson*, 101 Idaho 58, 608 P.2d 861 (1980). Our Supreme Court recently reiterated "that the policy behind punitive damages is deterrence rather than punishment." *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho at 905, 665 P.2d at 669. The court thus continues to follow the policy stated in *Yacht Club Sales and Service, Inc. v. First National Bank of North Idaho*, 101 Idaho 852, 623 P.2d 464 (1980), where it said:

"We prefer to accentuate those cases which define the purpose of exemplary damages as a deterrent to the defendant and others from engaging in similar conduct in the future. We concede that any exemplary damages assessed against a defendant will appear to him to be punishment. However, we feel that the courts in these civil cases should be motivated primarily by a purpose of deterrence and not by a purpose of punishment.... Punishment, per se, should be left to the criminal law."

*Id.* at 864, 623 P.2d at 476 (quoting *Jolley v. Puregro*, 94 Idaho 702, 708–09, 496 P.2d 939, 945–46 (1972)). Therefore, the district court should rarely, if ever, award punitive damages absent a likelihood of future bad conduct. *Linscott v. Rainier National Life Ins. Co., supra.* The likelihood of future bad conduct is a question of fact. Where there is substantial and competent—even though conflicting—evidence of extreme bad conduct and of a need for deterrence of similar future conduct, we will uphold an award of punitive damages. *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho at 905, 665 P.2d at 669.

The conduct complained of here is a breach of a covenant not to compete. The Gages violated the covenant by moving a building to their property and leasing it to

---

1. The district court's memorandum decision makes it clear that the punitive damages were based on the breach of the covenant not to compete. While the district judge found that the Gages committed other acts which he could have viewed as egregious, it is not shown that he based his award of punitive damages on those acts.

a third party for a period of five years. The lease contained the clause: "Lessee shall use said premises and equipment for restaurant and dining purposes only." The district court held that the punitive dmages were awarded "for the purpose of punishment and deterring similar conduct." The district court awarded only nominal damages for the breach, finding that the actual damages· the Davises sought to prove were too speculative.

 The Gages contend that nominal damages cannot serve as a basis for punitive damages. However, in *Village of Peck v. Denison*, 92 Idaho 747, 450 P.2d 310 (1969), the Idaho Supreme Court held "[t]he absence of a showing of actual damages need not bar an award of punitive damages, for such a showing is not a talismanic necessity." *Id.* at 751, 450 P.2d at 314. The foundational requirement is that some legally protected interest be invaded. *Village of Peck* held that an award of equitable relief fulfilled this requirement. We note that it is notoriously difficult to prove actual damages flowing from a breach of a covenant not to compete. *See, e.g., Vancil v. Anderson*, 71 Idaho 95, 227 P.2d 74 (1951); *Dunn v. Ward*, 105 Idaho 354, 670 P.2d 59 (Ct.App.1983). There is no reason why nominal damages, which also require a showing that a legally protected interest has been invaded, cannot fulfill the requirement. *See Aztec Limited, Inc. v. Creekside Inv. Co.*, 100 Idaho 566, 602 P.2d 64 (1979).

 Finally, the Gages argue that punitive damages may not be awarded in a breach of contract case. This is plainly not the law. "[N]umerous situations arise where the breaking of a promise may be an extreme deviation from standards of reasonable conduct, and, when done with knowledge of its likely effects, may be grounds for an award of punitive damages." *Linscott v. Rainier National Life Ins. Co.*, 100 Idaho at 860, 606 P.2d at 964.

 To justify an award of punitive damages, the conduct of the wrongdoer must also be wanton, malicious or gross

and outrageous, or imply malice or oppression. *Unfried v. Libert*, 20 Idaho 708, 119 P. 885 (1911). This means there must be an "intersection" of a bad act (an extreme deviation from reasonable standards of conduct) and a bad state of mind (*e.g.,* malice). *Linscott v. Rainier National Life Ins. Co.*, 100 Idaho at 858, 606 P.2d at 962. The district court stated that it could "imagine no clearer case of a violation of the intent expressed by the noncompetition clause in the original agreement." Nor can we. The covenant not to compete was clear and unambiguous. The Gages' conduct was, according to the district court, "willful, wanton, malicious and the proper subject for punitive damages."

While this statement reflected the view of the district court of the Gages' conduct in breaching the agreement not to compete, that conduct does not have to be viewed without regard to the Gages' other conduct throughout this controversy. The judge could properly consider the other acts done and statements made by the Gages which indicated malice or a purpose to defeat the Davises' efforts to perform their contract or to successfully operate the business they were purchasing. This other conduct of the Gages could also be considered in determining whether there was a need to deter the Gages from similar conduct in the future. The imposition of nominal damages is unlikely to have any deterrent effect. However, an assessment of punitive damages takes away the incentive for engaging in bad conduct by making such conduct unprofitable. *See Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551 (1969). The district court's decision to award punitive damages is supported by substantial evidence and will not be disturbed on appeal. I.R.C.P. 52(a).

Punitive damages having been properly awarded, the only question remaining is whether the award was excessive. *Boise Dodge, supra*. The Gages argue that punitive damages should be limited to reasonable attorney fees, related expenses and reimbursement for time and effort required to bring the action. For this proposition, they rely on the categorization of punitive

damages found in *Cox v. Stolworthy*, 94 Idaho 683, 496 P.2d 682 (1972). After the present case was argued, however, the Idaho Supreme Court decided *Cheney v. Palos Verdes Investment Corp., supra*, which explicitly overruled the *Cox* approach of "forcing" all fact situations into one of three categories. 104 Idaho at 904, 665 P.2d at 668.

After *Cheney*, the amount of punitive damages is left largely up to the district court's discretion. *Boise Dodge* indicated that no particular mathematical ratio is prescribed and that "the true basis for an award of one amount of punitive damages as opposed to another amount lies in an overall appraisal of the circumstances to the case." 92 Idaho at 908, 453 P.2d at 557. Some of the factors which go into a judge's decision on whether punitive damages are excessive include the wrongdoer's motives, the degree of calculation, and the extent of the wrongdoer's disregard of the rights of others. *Id.* Any factor he does examine, however, should focus on advancing the policy of deterrence.

In fixing the amount of punitive damages, the district judge stated he "considered the possible accrual of future damages in the event the [Gages' lessees continued to operate a restaurant for the duration of their five-year lease] ... and which could constitute a continuing breach of the Gage-Davis contract." We are uncertain how this factor affected the amount of the award. The district judge may have thought that the future operation of the competing restaurant could not be stopped or enjoined because of the rights of an innocent lessee who is not a party to this action. However, to the extent the judge intended that the punitive damages would be in lieu of any actual damages that the Davises might otherwise be entitled to during the remainder of the five-year lease, we would not agree with the award. Punitive damages are not to take the place of future compensatory damages. Rather, the primary purpose is to eliminate the financial incentive that otherwise would exist for continued or future bad conduct if the de-

fendant were required only to compensate the aggrieved party for his probable losses while retaining any net benefits from the prohibited acts.

Another factor which the district judge considered in arriving at the amount of punitive damages he awarded to the Davises was the outcome of a previous lawsuit between the same parties. The prior lawsuit, Bonner County case no. 16424, was a quiet title action decided by Judge Towles in favor of the Davises. On appeal by the Gages, we reversed with directions that title to a disputed strip of ground be quieted in the Gages. Our decision in that appeal was released after the trial in the present case. *See Gage v. Davis*, 104 Idaho 48, 655 P.2d 942 (Ct.App.1982).

We are unable to discern from the record how the district judge's decision in Bonner County case no. 16424 affected the amount of punitive damages he awarded in this case. Therefore, we will remand to the district court so it can be determined how and to what extent the amount of punitive damages should be adjusted as a result of the final outcome of the quiet title action. The district judge should otherwise reconsider the amount of punitive damages that he deems appropriate in view of our opinion here and the opinion in *Cheney, supra.* The amount of punitive damages should be primarily related to what is necessary for deterrence of defendant and others from engaging in similar conduct, rather than to punishment of defendant. Finally, punitive damages should not include an amount for future compensatory damages which may or may not accrue from the competing restaurant operation after the date this case was tried. We recognize that the district judge who decided these two actions is now retired. If possible, he should be reassigned to make the necessary findings and issue an amended judgment. As an alternative, another district judge may, after a hearing, make this determination. The total amount found due in the amended judgment shall bear interest at the applicable judgment rate from the date of the original judgment.

## II

The district court awarded the Davises $1,000 for mental anguish resulting from a course of conduct engaged in by the Gages. The Gages challenge the sufficiency of this evidence to support damages for mental anguish.

■ An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress. *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980). The Arizona Court of Appeals put it this way:

There are four elements which must coincide to impose liability for intentional infliction of emotional distress: (1) conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress must be severe.

*Venerias v. Johnson,* 622 P.2d 55, 58 (Ariz. App.1980). We need not discuss the first three elements as they relate to this case because we hold that the fourth—severe emotional distress—was not established by legally sufficient evidence.

RESTATEMENT (SECOND) OF TORTS § 46, comment j (1965), describes severe emotional distress:

The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises.* Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. *Severe distress must be proved;* but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. [Emphasis added.]

■ Severe emotional distress may be shown either by physical manifestation of the distress or subjective testimony. *Hatfield v. Max Rouse & Sons Northwest, supra.* There is only one indication in the record of physical manifestation of emotional distress. Sandra Davis' mother testified, unsupported by the testimony of either Sandra or David Davis, that plaintiffs developed ulcers because of the Gages' conduct. The subjective testimony of the Davises indicated they were upset, embarrassed, angered, bothered and depressed. Liability, however, only results when these reactions are so severe that no reasonable person could be expected to endure it. RESTATEMENT (SECOND) OF TORTS, § 46, comment j (1965). The required severity is not borne out by the record. There is no competent evidence to show that the Davises incurred any physical damage or were hampered in the performance of their daily functions, nor did they demonstrate that they suffered a severely disabling emotional response to the Gages' conduct. *Venerias v. Johnson, supra.* Therefore, we hold, as a matter of law, that the Davises did not suffer the severe emotional distress required to warrant recovery of damages.

## III

The Gages last contend that the evidence was insufficient to support the compensatory damages awarded against them for wrongfully severing a sewer line between the Davises' property and a drainfield on the Gages' property. First, the court held that upon purchasing the tavern the Davises "acquired an implied easement for the operation of the septic tank and the drainfield on the [Gages'] property together with the right of ingress and egress to repair and maintain the same." The evi-

dence supports this holding. *See* I.C. § 55–603. The evidence was undisputed that this drainfield failed or became saturated for one reason or another in late 1975. The district health department then required that the system be repaired or replaced or the Davises' business would be shut down. The Gages refused to allow the drainfield to be reconstructed so the Davises built a new drainfield on their own property. It was then that Mr. Gage severed the connection to the old drainfield, before the new system was completed. The evidence shows the Davises paid $575 to have a drainfield constructed on their own property. No evidence was offered, by either side, as to what the cost would have been to reconstruct or repair the old drainfield on the Gages' property. However it is apparent that the Davises would have had some expense to restore the system even if the Gages had allowed the use of the easement for this purpose.

█ The new system on the Davises' property apparently worked throughout 1976 and 1977. In the spring of 1978 the Davises had the septic tank on their property dug up and moved to a new location at a cost of $554.37. They built an addition to their tavern over the location where the tank had been. During this period of time, from March to July, the Davises had to have one septic tank pumped weekly, at a total cost of $1,230. The trial judge awarded all of these costs totaling $2,359.37 as damages to the Davises. However, the judge made no finding why it was necessary for the Davises to relocate their disposal system the second time. Davis admitted he dug up the system for room to expand his building, but he contended the system "wasn't adequate." Moreover, it is not clear why it was necessary for continual pumping of the system for a period of four months while the tavern addition was being constructed. Because the evidence is disputed and it suggests that not all of the Davises' expenses were caused by the Gages' refusal to recognize the easement, we vacate this award of damages. We remand this issue back to the district court for additional findings and conclusions. Addi-

tional evidence as to this item of damages may be taken if necessary.

In summary, we affirm an award of punitive damages, but remand for a reconsideration of the amount in accordance with this opinion. We vacate the award of damages for emotional distress. We remand for a redetermination of the amount of damages resulting from wrongful denial of the use of the easement. No costs or attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.