IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 51782

| | |
|---|---|
| CARMEN GARSHELIS, | ) |
| | ) Filed: January 6, 2026 |
| Plaintiff-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| AARON DANE BENNETT, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |
| and | ) |
| | ) |
| MATT JOSEPH VRASPIR, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. James Cawthon, District Judge.

Amended judgment, affirmed in part, reversed in part, and remanded for further proceedings.

Animal Law Offices, PLLC; Adam P. Karp, Bellingham, Washington, for appellant.

Aaron Dane Bennett, Star, pro se respondent.

_____

TRIBE, Chief Judge

Carmen Garshelis appeals from the district court's amended judgment. We affirm the amended judgment in part, reverse in part, and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to leaving town, Garshelis asked her ex-fiancé, Aaron Dane Bennett, to watch her dog, Stanley. Stanley was shot and killed while in Bennett's care. Bennett and his brother, Matthew Joseph Vraspir (who was in Bennett's home when Stanley was shot), originally told Garshelis that Stanley escaped and that they did not know his whereabouts. After misleading

1

Garshelis about the events surrounding Stanley's death, Bennett confessed to Garshelis that Stanley had been shot and killed and that Bennett and Vraspir disposed of the body in the Boise River. Bennett claimed the shooting was accidental.

Garshelis brought an action against Bennett and Vraspir to recover damages for Stanley's death and its impact on her. Following mediation, Vraspir settled with Garshelis. The action continued against Bennett, and he represented himself throughout the proceedings. After motion practice, default judgment was taken against Bennett. After a hearing on damages, the district court issued its amended judgment awarding compensatory damages in the amount of $3,798.75 and costs as a matter of right to Garshelis.

Alleging the district court erred in fifteen respects, Garshelis appeals. Bennett argues this Court should uphold the district court's decision and not award additional damages or allow a retrial because sufficient evidence of damages was not proven.

## II.

## STANDARD OF REVIEW

Over questions of law, we exercise free review. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992); *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989). The determination of the correct measure of damages is a question of law the appellate court reviews de novo. *Gen. Auto Parts Co. v. Genuine Parts Co.*, 132 Idaho 849, 854, 979 P.2d 1207, 1212 (1999).

A trial court's ruling on a motion to amend a complaint to add a claim for punitive damages is reviewed for an abuse of discretion. *Parks v. Safeco Ins. Co. of Illinois*, 160 Idaho 556, 561, 376 P.3d 760, 765 (2016). When reviewing a trial court's evidentiary rulings, the appellate court applies an abuse of discretion standard. *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007).

The trial court has broad discretion in determining the admissibility of testimonial evidence. A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently

2

with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

### III.

### ANALYSIS

As a preliminary matter, this Court notes that Garshelis fails to set forth the applicable standard of review for many of her claims of error by the district court. These include the standard of review for: (1) the proper measure of damages standard applicable to her claims set out in sections C, D, and E below; (2) the abuse of discretion standard applicable to her claims set out in sections C, D, and H below; and (3) the standard of review of the district court's findings of fact and conclusions of law applicable to her claims set out in sections F and G below. An appellant's brief must articulate the appropriate standard of review because an appellant must address the matters this Court considers when evaluating a claim put forth by an appellant on appeal. *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016). If an appellant fails to articulate or provide analysis relating to the relevant standard of review, the appellant's argument is conclusory which is fatally deficient to the party's case. *State v. Kralovec*, 161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2017). Garshelis has therefore waived these claims. Nonetheless, this Court addresses the issues below; however, except where relief may still be afforded, it does not negate the waiver.

### A. Punitive Damages

The district court denied Garshelis's motion to amend the complaint to include a claim for punitive damages. In denying the request, the district court found that "a review of the record does not show [Garshelis] has established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."

Idaho Code Section 6-1604 sets constraints on punitive damages, limits the types of misconduct which will support a punitive damages award, sets a "clear and convincing evidence" burden of proof at trial, and sets the standard to amend a pleading to include a prayer for relief seeking punitive damages. *Davis v. Blast Props., Inc.*, 174 Idaho 37, 39-40, 551 P.3d 706, 708-09 (2024). Section 6-1604(2) requires the trial court to weigh the evidence submitted by the moving party in support of its motion to amend to determine whether the moving party has established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

The word "sufficient" means that the claim giving rise to the request for punitive damages must be legally cognizable and the evidence presented must be substantial. *Davis*, 174 Idaho at 41-42, 551 P.3d at 710-11. Punitive damages are not favored in the law and the authority to award such damages should be exercised with caution. *Id.* at 39, 551 P.3d at 708.

In denying Garshelis's motion for leave to amend the complaint to add punitive damages, the district court stated that it reviewed the entire record and recognized that it was a discretionary decision. The district court outlined details in the record that led to its decision. These included: the Ada County Sheriff's Office's records of the incident concluded Bennett accidentally shot Stanley while Bennett was drunk and cleaning his gun; he was not charged with cruelty to animals, which would have been evidence of a bad act with a bad state of mind; and, even though he was charged with unlawful disposal of an animal carcass, this violation alone did not show a bad act or a bad state of mind. The district court ultimately found Garshelis failed to demonstrate a reasonable likelihood that Bennett committed a bad act with a bad state of mind.

Garshelis argues that the district court erred in denying her request for leave to amend her complaint to seek punitive damages. Specifically, she claims the evidence showed a reasonable likelihood that "the killing was malicious, oppressive, and outrageous, rendering" Bennett's claim (that the shooting was accidental) fraudulent, and the district court thereby abused its discretion and misapplied the law to the facts in denying Garshelis's motion to amend the complaint to seek punitive damages.

Garshelis has failed to demonstrate an abuse of discretion by the district court. Garshelis does not argue that the district court failed to perceive the issue as one of discretion. Garshelis similarly does not argue that the district court, in having the discretion to grant or deny the proposed amendment, acted outside the boundaries of its discretion in its decision to deny the request. Garshelis also does not argue that the district court failed to appreciate the law pertaining to a motion to amend to add a claim for punitive damages. Instead, she argues that the district court failed to properly apply the facts to the law. Garshelis's primary argument is that the district court failed to exercise reason by relying on factors underlying the purposes of punitive damages and not adequately considering the evidence supporting her motion to amend.

In the district court's memorandum and order on Vraspir's motion to strike, Garshelis's demand for jury trial and motions for judgment on the pleadings and motion for leave to amend to add punitive damages, the district court recognized and quoted Bennett's admissions to certain

4

allegations in Garshelis's complaint. Thereafter, the district court recounted the evidence set out in Vraspir's opposition to the motion for leave to amend, including the circumstances in which Stanley was killed and the disposal of his body. The district court also noted that Garshelis filed the motion for leave to amend before any depositions had been taken in the case. Thus, the evidence on the motion to amend was limited.

Garshelis argues that the district court erred in discussing "recidivism" or the goal of punitive damages to deter future like conduct; "state of mind" evidence, including referencing "cancel culture"; Bennett and Vraspir's "elaborate fraud"; and Bennett's history of criminal intoxication, jealousy, and anger. As to "recidivism," or the goal of deterring future like conduct, Garshelis acknowledges that precedent establishes that a district court should rarely, if ever, award punitive damages absent a likelihood of future bad conduct. *See Davis v. Gage*, 106 Idaho 735, 738, 682 P.2d 1282, 1285 (Ct. App. 1984). However, Garshelis argues this goal of deterring future bad conduct is not expressly stated in I.C. § 6-1604 and, therefore, did not survive the enactment of that provision which occurred after *Davis* was decided. Garshelis's argument is misplaced. While I.C. § 6-1604 discusses evidence bearing on punitive damages, Garshelis cites to no authority supporting the contention that the historical purposes of punitive damages were eviscerated by the statute. The district court properly considered whether, under the circumstances of this case, an award for punitive damages would serve the purposes of punitive damages, including punishing current and deterring future bad behavior.

Garshelis argues the district court failed to fully appreciate the evidence of Bennett's bad state of mind. As evidence of this claimed failure, Garshelis notes the district court's comment on "cancel culture." The district court made this remark in reference to Bennett noting the publicity of the case and his decision to proceed without a lawyer. Garshelis suggests that this and other comments made by the district court demonstrate that the district court was a "feverish apologist" for Bennett and Vraspir and their conduct. However, the district court looked to the evidence of whether killing Stanley was intentional or accidental, the attendant circumstances, and Bennett and Vraspir's conduct immediately after the shooting. The district court concluded that the evidence did not support an amendment to add a claim of punitive damages.

As to the "elaborate fraud," Garshelis argues the district court should have considered Bennett's perjury and Vraspir's subornation of perjury. Bennett signed an affidavit that stated Vraspir was not involved. Vraspir's lawyer sent a letter including the affidavit, false text messages,

5

and a threat to Garshelis to cease harassing Vraspir or face a lawsuit. However, the letter went unclaimed by Garshelis and was returned to Vraspir's lawyer. As noted by the district court, the ostensible effort to protect Vraspir after the fact bears little relevance to the basis for a claim of punitive damages.

Finally, Garshelis points to evidence of Bennett's history of criminal intoxication, jealousy, and anger. Garshelis suggests the district court seemed to assume that Bennett accidently killed Stanley, notwithstanding his purported drunkenness while handling a gun, when viewed against his historic jealousy and anger. In considering the purposes of punitive damages, the district court weighed the evidence of an intent based on anger against the evidence of an accident and poor or misguided judgment and found that Garshelis failed to justify an amendment to include a claim of punitive damages based on Bennett's history.

As to intent compared to accident, we note that Garshelis did not initially submit the declaration of expert, Gaylan Warren, in support of the motion to amend. Warren's declaration was submitted later with a motion for reconsideration. The district court entered an order sua sponte correcting the standard of review applicable to the decision on the motion to amend but reaffirmed its prior decision under the correct standard of review. In the district court's December 2022 decision on reconsideration, it stated that it was asked to reconsider its September 2022 decision on partial summary judgment. The district court noted that it did not address the claim of punitive damages in that order but, in response to arguments made in the motion to reconsider, stated that its decision on the negligent and intentional infliction of emotional distress claims did not affect the punitive damages analysis. The district court did not discuss the Warren declaration. In Warren's declaration, he opined that the physical evidence belied Bennett's claim that the incident was an accident. As noted, the district court reviewed the evidence at the time of the motion to amend and determined that evidence of intent to kill Stanley was lacking. In the district court's decision following the default hearing, it stated that "the Court does not find credible [Garshelis's] Expert Gaylan Warren's interpretation of 'intentional' in this context." In addition, the district court found that Garshelis's claim that Bennett shot Stanley because Bennett was angry that Garshelis had not responded to a text message was not credible. On appeal, Garshelis fails to point to a decision by the district court where reconsideration of the motion to amend after the filing of the Warren declaration was expressly addressed or omitted. Having

6

reviewed the record, we cannot say that the district court erred in denying Garshelis's request for leave to amend the complaint to allow punitive damages.

**B.      Damages in Context of Default**

Garshelis argues that the district court erred in failing to adopt the allegations in Garshelis's first amended complaint as true as to her claims for damages. Generally, where the defendant has been defaulted, a plaintiff has no obligation to introduce evidence in support of the complaint's allegations. *Olson v. Kirkham*, 111 Idaho 34, 37, 720 P.2d 217, 220 (Ct. App. 1986). Idaho Rule of Civil Procedure 55(b)(2) provides exceptions for when a plaintiff must introduce evidence. These exceptions include when the trial court, to enter or effectuate judgment, needs to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." In its amended findings of fact and conclusions of law, the district court recognized that, because damages were unspecified in the first amended complaint, the district court needed to determine the "amount of damages pursuant to Rule 55(b)(2)."

Garshelis argues that the district court disregarded that the first amended complaint "explicitly set forth a minimum amount of damages as to economic and noneconomic damages combined, in a sum beyond magistrate jurisdiction ($10,000) and the fee-shifting limits of I[.]C[.] [§] 12-120 ($35,000)." We disagree. The district court exercised its discretion in determining whether additional evidence was necessary when it held a hearing on damages. In reviewing the amended findings of fact and conclusions of law, we cannot agree with Garshelis that the district court disregarded the first amended complaint. However, the allegations set forth as to the minimum jurisdictional amount and fee shifting do not relate to or set an amount that the district court is bound by in awarding damages. Garshelis may disagree with the result of the damage award but this Court cannot say that the district court abused its discretion in following Rule 55(b)(2).

Next, Garshelis contends the district court erred in permitting Bennett to present argument or evidence at the default judgment hearing. However, Garshelis acknowledges that, though given the opportunity, "Bennett presented no witnesses, did not testify himself, offered no exhibits, and did not cross-examine." After providing an opportunity for both parties to submit findings of fact and conclusions of law, Bennett filed a motion to dismiss the order of default judgment with proposed findings of fact and conclusions of law. It is unclear whether Bennett's motion to

dismiss, combined with his proposed findings of fact, is how Garshelis claims the district court erred in allowing Bennett to present argument or evidence at the "default judgment hearing" because she does not discuss it again. Garshelis does not explain how the caselaw cited regarding default precludes Bennett's filings. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). In addition, Garshelis makes no showing that Bennett's filings were considered by the district court or impacted the outcome of the case. Trial courts must disregard all errors that do not affect a party's substantial rights. I.R.C.P. 61. Garshelis has failed to show that the district court procedurally erred in analyzing her claims for damages under the procedures applicable in the context of default.

## C.  Stanley's Value and Remains Were Properly Limited to Fair Market Value

Garshelis argues that the death of Stanley deprived her of his "intrinsic value as a living being and deprived her of his utility for years to come. Bennett's dumping Stanley in the river further diminished the intrinsic value of Stanley's remains and deprived her of the ability to mourn his loss properly." Garshelis recognizes that, at the time of her briefing, the question of animal valuation was before the Idaho Supreme Court in *Schriver v. Raptosh*, 174 Idaho 498, 557 P.3d 398 (2024).

*Schriver* has now been decided. In regard to the measure of damages for the loss of a pet, the Idaho Supreme Court held:

> We conclude that the district court did not err in determining the value to owner measure of damages for the loss of Gypsy. We recognize the strong emotional bonds people form with their pets, whether cats, dogs, or some other animal. We understand that the benefit of owning such a pet is not economic, but relational, and we empathize with all pet owners when they lose that relationship. Nevertheless, we must also recognize that in the eyes of the law pets are property, and we must treat them as such here. The economic value to the owner, which includes evidence of a pet's pedigree, habits, traits, and reputation, but not sentimental value, is the appropriate measure of damages for loss of a pet when the pet has no fair market value.

*Id.* at 517, 557 P.3d at 417. The Court held that ordinarily the fair market value of the property at the time of its destruction is the appropriate measure of damages. However, if there is no fair market value, then its value to the owner may be used. *Id.* at 515-16, 557 P.3d at 415-16.

Here, evidence of fair market value exists. The district court, in its ruling on the motion for summary judgment, found that, as a matter of law, the measure of damages for the loss of a

8

dog is the fair market value of the dog "and any attendant financial or economic cost associated with the recovery of Stanley after he was killed and secreted away." Citing to evidence presented--specifically, that Garshelis paid $500 for Stanley--the district court found that Stanley had a fair market value of $500. The district court confirmed its decision in its ruling on Garshelis's motion to reconsider. The district court found that Stanley was not a rare breed and, because evidence of a fair market value was provided, the economic value to Garshelis (which includes evidence of the dog's pedigree, habits, trait, and reputation) was not the proper measure of damages.

As noted in the previous subsection, Garshelis argues that, due to Bennett defaulting, the district court erred in failing to deem the allegation of Stanley's value in her first amended complaint as true. In discussing the special value of Stanley, Garshelis alleges that, at both summary judgment and "at default judgment," the district court failed to accept as a verity the allegation of a special value. Garshelis also argues that the district court wrongly assumed that "certification" was required to become an emotional support animal. The district court did not err by failing to accept as true the allegation of special value in the complaint. While there may be allegations of special value, the district court had evidence from Garshelis of Stanley's fair market value. The district court was well within its discretion to employ the procedures outlined in I.R.C.P. 55(b)(2) and determine from the evidence that Stanley's fair market value was established and was valued in the amount of $500. Under these circumstances, the district court did not err in applying fair market value as the correct measure of damages. Therefore, the district court did not err by finding that, as a matter of law, Stanley and his remains were limited to a fair market value of $500.

D.      Loss of Use Damages

In its amended findings of fact and conclusions of law, the district court determined that "Garshelis did not put any evidence in the record that Stanley provided income, for example, from breeding purposes. There is no evidence in the record Garshelis suffered any monetary damages due to the loss of use of Stanley." Citing *Thompson v. First Sec. Bank of Idaho, Nat'l Ass'n*, 82 Idaho 259, 262, 352 P.2d 243, 244 (1960), Garshelis argues that Idaho law allows for recovery of the loss of use of property while under repair, so long as "reasonably susceptible" to repair and for a "reasonable period" of repair. Citing *Straka Trucking, Inc. v. Est. of Peterson*, 989 P.2d 1181 (Wash. Ct. App. 1999), Garshelis also argues that, although "typically reserved for damaged

9

property only, until payment is made by the defendant, loss of use is recoverable even on destroyed property." Thus, Garshelis argues that loss of use continues until judgment and no good reason exists to disallow loss of use of animate personalty when caselaw permits it "for inanimate hunks of steel."

In *Thompson*, Thompson filed suit against a bank for damage to goods and merchandise, interior walls, and ceilings and for loss of profits allegedly caused by the construction of the bank's building, which was adjacent to the building where Thompson conducted his business during the period of construction. After a bench trial, the trial court found that the bank had caused, permitted, and maintained a private nuisance during the construction; further, that the evidence, while it showed that Thompson's stock in trade was injured, failed to prove any pecuniary amount of damages or provide any means by which such might be determined. Judgment was entered in Thompson's favor and the trial court awarded damages related to the interior walls and ceilings of his business but denied his claim for damages to goods and merchandise. Thompson appealed from the denial of his claim for the damaged goods and merchandise. *Thompson*, 82 Idaho at 261-262, 352 P.2d at 244.

On appeal, the Idaho Supreme Court rejected Thompson's contention. The Court ruled that Thompson sought the adoption of a rule regarding damage to personal property, which did not rest upon an established theory. "Here, the personalty was not totally destroyed, but only subjected to some injury. The governing rule in such instance is, that the damage constitutes the reasonable cost of repair plus the value of the loss of use of the property during the period of time necessary for repairs," provided that the sum of these items does not exceed the difference in the market value of the property before and after the injury. *Id.* at 262, 352 P.2d at 244. This case cannot be applied to a deceased dog. There is no "reasonable cost of repair plus the value of the loss of use of the property during the period of time necessary for repairs." Although Idaho law views Stanley as property, all property law cannot be applied to a deceased pet.

Garshelis next turns to *Straka Trucking*. In *Straka Trucking*, a commercial logging truck was totaled in an accident caused by Peterson's negligence. Straka Trucking claimed damages for loss of use--beginning with the date of the accident and ending with the date on which Peterson's estate paid for the truck. The trial court granted Peterson's estate's motion for summary judgment. On appeal, the Washington Court of Appeals reversed the trial court's ruling on summary

10

judgment. *Straka Trucking*, 989 P.2d at 1182. Citing to authorities confirming the application of general tort principles, the Court held:

> In general, the plaintiff can almost always recover some measure of damages for a reasonable period of lost use. Loss of use claims are appropriate in the case of private chattels, such as the family car or the pleasure boat. They are also appropriate in the case of commercial animals and equipment of all kinds . . . .
>> Loss of use may be measured by (1) lost profit, (2) cost of renting a substitute chattel, (3) rental value of the plaintiff's own chattel, or (4) interest.
>
> Moreover:
>> The owner who uses a chattel in the production of income is always entitled to claim profits lost when the chattel is unavailable during a reasonable period for repair *or replacement* as a result of tortious *destruction,* damage, or conversion. The claim may be that inability to use the chattel reduced the plaintiff's income or that it increased his expenses, either way reducing his net profit, which is recoverable if the proof is adequate.

*Id*. at 1183 (quoting DAN B. DOBBS, LAW OF REMEDIES § 5.15(1) and (2), at 875-76 (2d ed.1993)) (internal citation and footnotes omitted). Neither of the authorities cited by Garshelis stand for the proposition that she may recover for the loss of use of Stanley. Stanley did not reduce Garshelis's income or increase expenses reducing her net profit as required by *Straka Trucking*. Stanley was not a commercial animal (creating lost profits) nor could Garshelis rent a substitute to allow for the loss of use formula. There is no "reasonable cost of repair plus the value of the loss of use of the property during the period of time necessary for repairs," as set forth in *Thompson*. Therefore, the district court did not err in denying the loss of use claim for Stanley and concluding that Garshelis did not present any evidence in the record that Stanley provided income or that Garshelis suffered any monetary damages due to the loss of use of Stanley.

**E.      Emotional Distress Damages for Conversion, Trespass to Chattels, and Fraud Claims**

Garshelis argues the district court erred by denying her the opportunity to recover emotional distress damages for conversion, trespass to chattels, and fraud claims. Citing to *Gill v. Brown*, 107 Idaho 1137, 1138-39, 695 P.2d 1276, 1277-78 (Ct. App. 1985), the district court concluded that "recovery of emotional distress damages related to the death of a pet, if any, are limited to th[e] specific causes of action [of negligent and intentional infliction of emotional distress]."

Garshelis recognizes that the ability to recover emotional distress damages for conversion and trespass were pending before the Idaho Supreme Court in *Schriver*. The *Schriver* Court acknowledged that, while *Gill* did not directly address damages for claims of conversion and trespass to chattels, the rationale for limitation on damages set out in *Gill* applied to those causes of action. *Schriver*, 174 Idaho at 507, 557 P.3d at 407. The *Schriver* Court agreed with the decision in *Gill* and specifically limited emotional distress damages in relation to the loss of a pet to the independent torts of negligent or intentional infliction of emotional distress. Garshelis's additional claim for fraud falls within the same rationale. Generally, recovery for mental anguish is not available in a fraud case. *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 271, 483 P.3d 313, 328 (2021); *Umphrey v. Sprinkel*, 106 Idaho 700, 711-12, 682 P.2d 1247, 1258-59 (1983). Therefore, the district court did not err in precluding claims for emotional distress based on the theories of conversion, trespass to chattels, and fraud.

**F.      Intentional Infliction of Emotional Distress**

Garshelis claims the district court erred in awarding only nominal emotional distress damages under the theory of intentional infliction of emotional distress when the first amended complaint expressly alleged that Garshelis experienced "severe emotional distress" and when the undisputed evidence also furnished such foundation.

The recovery of emotional distress damages in relation to a destroyed pet is limited to the independent torts of negligent or intentional infliction of emotional distress. *Schriver*, 174 Idaho at 506, 557 P.3d at 406. The Idaho Supreme Court set forth the elements for intentional infliction of emotional distress:

> To establish a viable claim for intentional infliction of emotional distress, the plaintiff must prove four elements: (1) intentional or reckless conduct; (2) the conduct must also be extreme and outrageous; (3) a causal connection between wrongful conduct and the emotional distress; and (4) severe emotional distress. The district court acts as a gatekeeper . . ., weeding out weak causes of action. The district court must first determine whether the defendant's conduct, as alleged, may reasonably be regarded as so extreme and outrageous to permit recovery. If, based upon the facts as alleged, no reasonable minds could conclude that the defendant's conduct was so extreme and outrageous to permit recovery for intentional infliction of emotional distress, then the district court may properly grant summary judgment in the defendant's favor.

*Schriver*, 174 Idaho at 513, 557 P.3d at 413 (internal quotations and citations omitted).

12

Garshelis's argument regarding the award of intentional infliction of emotional distress is unclear. Because the district court found liability on the issue of intentional infliction of emotional distress, the argument must necessarily be related to the amount of damages awarded. Garshelis included a section in her brief related to improper and inadequate awards. There, Garshelis first argues that the district court erred in not awarding the amount set out in her complaint ($35,000), which was made in reference to the fee shifting in an attorney fee award under I.C. § 12-120. Garshelis also alleged that her claims exceed the jurisdiction of a magistrate court ($10,000). Garshelis argues that the district court was required to award commensurate amounts due to Bennett's default. This argument has been addressed and rejected in section B above. Moreover, neither alleged amount relates specifically to a particular claim raised, including intentional infliction of emotional distress.

Also as noted in section B, in its amended findings of fact and conclusions of law, the district court recognized that, because damages were unspecified in the complaint, the district court needed to determine the "amount of damages pursuant to Rule 55(b)(2)." The district court conducted a hearing on the issue of damages. Following the hearing on damages, the district court issued its amended findings of fact and conclusions of law. The district court found that "Garshelis has failed to offer the Court a reason compensatory damages for emotional distress are warranted." The district court also found that the medical records submitted at the damages hearing did "not establish Garshelis suffered severe emotional distress to warrant damages" and that she did not present the substantial evidence necessary to establish she suffered severe emotional distress justifying the award of compensatory damages. In regard to intentional infliction of emotional distress, the district court stated that, "based on the Court's findings and conclusions above, and based upon the default by Bennett, the Court awards nominal damages of $1,000."

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Est. of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable

13

law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

It is unclear in Garshelis's briefing where the issue of intentional infliction of emotional distress is actually addressed or supported by argument or law. However, in the section of her appellate brief entitled "Default Judgment Procedural and Substantive Errors and Reassignment," Garshelis argues:

> [T]he trial court plainly erred in wrongly contending that Garshelis only saw her counselor twice (R. VOL. I, pp. 314, 331), and, from this error, determining she suffered no severe emotional distress sufficient to award anything more than "nominal." In so doing, the court disregarded abundant testimonial evidence. CONF. R. VOL. I, pp. 10-11 (seeing counselor and nurse from March 2022 through August 2022; discussing several serious emotional conditions with physical manifestations, and diagnoses; risking live[s] of her and her children in rainstorm to rush back to Star to search for Stanley); 36-38 (August 2022 declaration from counselor confirming having been "working with [Garshelis] since March 14, 2022"); 361-362, 370-378; TR. VOL. I, pp. 168:19-20, 169:1-14, 170:14-16, 171:11-19 (confirming about 30 sessions, seeing new counselor 5-6 times as of date of hearing; still seeing psychiatric nurse as of date of hearing). That the court would hear and see all that was presented, which it had to assume as true, and still conclude that she did not present "credible evidence of severe emotional distress to warrant an award of damages" is beyond confounding and indicative of bias.

(footnote and emphasis omitted). An omitted footnote within the text quoted above acknowledges that the last reference to Tr. Vol. I is to exhibit 48, which was not admitted. As to the other cited references, several are to pleadings not affidavits or declarations admitted at trial. A cited August 2022 declaration from counselor, Sara Busick, states that she began seeing Garshelis in March 2022 and had seen her recently. The declaration only attaches a master treatment plan--amended in May 2022. The district court noted that Garshelis saw Busick beginning in March 2022 and again in May 2022. The records cited, to the extent they were admitted at the

14

hearing, do not show a material discrepancy in what the district court was referring to or that the district court omitted critical evidence from its findings of fact. The district court stated that it reviewed the records (admitted as exhibits 41, 42, and 43) from Busick and another counselor. The district court noted that neither counselor testified at trial nor administered a forensic psychological exam.

Garshelis also complains that the district court failed to consider all of the circumstances in regard to its findings as to her demeanor in court. The district court made several credibility findings: "the self-reporting of symptoms in this context not credible evidence of severe emotional distress to warrant an award of damages"; Garshelis's "demeanor in Court did not correspond with the severity of her claims"; "she seemed to function appropriately"; and "it [is not] credible that her emotional distress was so severe that she was hampered in the performance of her daily functions or work." Since it is the province of the trial court to weigh the evidence and testimony and to judge the credibility of witnesses, the reviewing court will liberally construe the trial court's findings of fact in favor of the judgment entered. *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999). This Court will not disturb the district court's credibility findings.

The district court also found that the declaration of Garshelis's expert witness, Warren, regarding Bennett's intent was not credible. The district court found the medical records and notes were not substantial evidence of severe emotional distress and that Garshelis submitted no credible or objective evidence establishing she suffered from post-traumatic stress disorder or major depressive disorder. The district court found the self-reporting of symptoms in this context not credible evidence of severe emotional distress and received no persuasive corroborating evidence. This Court cannot say that the district court abused its discretion in its award of damages. The district court's findings of fact and conclusions of law are supported by substantial and competent evidence. Therefore, Garshelis has failed to show error in the district court's award of damages for intentional infliction of emotional distress.

## G. Negligent Infliction of Emotional Distress

Garshelis next argues that the district court erred by failing to find Bennett liable for negligent infliction of emotional distress and failing to award any damages under this cause of action. Garshelis asserts that the district court failed to enter findings of fact and conclusions of law addressing the claim of negligent infliction of emotional distress; instead, simply dismissing the claims in its amended findings of fact and conclusions of law.

15

As noted above, a trial court sitting as a finder of fact is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a). In *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982), the Supreme Court stated:

> When the court sits as the trier of fact, it is charged with the duty of preparing findings of fact and conclusions of law in support of the decision which it reaches. The purpose behind requiring the court to find the facts specially and state separately its conclusions of law thereon is to afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case. The absence of findings and conclusions may be disregarded by the appellate court only where the record is clear, and yields an obvious answer to the relevant question. Absent such circumstances, the failure of the trial court to make findings of fact and conclusions of law concerning the material issues arising from the pleadings, upon which proof is offered, will necessitate a reversal of the judgment and a remand for additional findings and conclusions, unless such findings and conclusions would not affect the judgment entered . . . and, where there is no evidence which would support further findings material to the judgment, the judgment will simply be reversed, the plaintiff having failed to prove his claim.

(internal quotations and citations omitted).

The district court dismissed the negligent infliction of emotional distress claim in its September 27, 2022, memorandum regarding summary judgment; specifically, finding that the district court "should not find a duty exists because of the enormous impact it would have on the community." Garshelis filed a motion to reconsider, and the district court reinstated the negligent infliction of emotional distress claim against Bennett. Following the hearing on damages, the district court issued its amended findings of fact and conclusions of law. In its findings, the district court found that "Garshelis has failed to offer the Court a reason compensatory damages for emotional distress are warranted." The district court also found that the medical records submitted at the damages hearing did "not establish Garshelis suffered severe emotional distress to warrant damages" and that she did not present the substantial evidence necessary to establish she suffered severe emotional distress justifying the award of compensatory damages. As noted, the district court awarded Garshelis nominal damages for the intentional infliction of emotional distress claim. There was no discussion regarding the negligent infliction of emotional distress claim.

Garshelis filed a motion to amend the original judgment, specifically with a request to address the negligent infliction of emotional distress claim. The district court entered an amended judgment dismissing the claim of negligent infliction of emotional distress, which the original

16

judgment did not address. This Court cannot properly review the negligent infliction of emotional distress claim because the district court failed to identify which of its findings were germane to its basis for dismissal of this claim. While some of the district court's findings may apply to both the intentional infliction of emotional distress claim and the negligent infliction of emotional distress claim, the district court did not so state. Nor are there any findings that clearly relate only to the negligent infliction of emotional distress claim. Moreover, the reason for dismissal of that claim is not stated or obvious. Because the district court made no findings of fact regarding the negligent infliction of emotional distress claim, the issue cannot be reviewed. Therefore, the case is remanded for the district court to make sufficient findings of fact and conclusions of law regarding the negligent infliction of emotional distress claim.

## H.     Discretionary Costs

Garshelis claims that the district court erred in its award of discretionary costs. As an initial matter, Garshelis argues that the district court abused its discretion by failing to allow her expert witness to offer testimony by declaration but, instead, requiring in-person testimony at the default judgment hearing. Garshelis contends that she hoped to forgo the cost of calling live witnesses by submitting declarations, "but the court's refusal to do so, even in the context of a default judgment, put her once again at a tactical disadvantage."

Other than to claim that evidence favorable to Bennett was allowed by declaration but that Garshelis's expert's declaration was not allowed, Garshelis fails to point this Court to such allegedly admitted declarations in the record. In support of this argument, Garshelis cites only to Warren's declaration in the record, his testimony regarding his opinion that the shooting was intentional, and the district court's ruling that the excess costs would not be awarded because Warren's testimony was duplicative and that the district court did not accept his opinion. Nowhere does Garshelis cite to any ruling by the district court that Warren's testimony would be required live versus by declaration. Because the appellate court will not search the record on appeal for error, the appellant is required to support his or her argument with citations to the authorities, statutes and parts of the transcript and record relied upon. Idaho Appellate Rule 35(a)(6); *State v. Lankford*, 172 Idaho 548, 559, 535 P.3d 172, 183 (2023). Failure to supply the required citations will waive appellate consideration of the issue. *See State v. McDay*, 164 Idaho 526, 528, 432 P.3d

17

643, 645 (2018). Consequently, this argument does not support Garshelis's position on discretionary costs.

As the prevailing party, Garshelis was awarded costs as a matter of right in the amount of $6,136.89. The district court found that Garshelis had not made a showing that additional costs were exceptional, necessary, and reasonably incurred and should be awarded in the interests of justice. Of the award, $2000 was for the expert witness fee for Warren. On appeal, Garshelis appears to request that $457.66 over the $2000 award for Warren be awarded as an exceptional and necessary cost.

When deciding the amount of costs to award, a district court may in its discretion award a prevailing party certain costs where there has been "a showing that the costs were necessary and exceptional costs, reasonably incurred, and should in the interest of justice be assessed against the adverse party." I.R.C.P. 54(d)(1)(D). When ruling upon objections to discretionary costs, the district court is required to make express findings as to whether the costs are reasonable, necessary, and exceptional and should be awarded against the adverse party in the interests of justice. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 315, 109 P.3d 161, 169 (2005); *see* I.R.C.P. 54(d)(1)(D).

The district court found that the expert witness fee for Warren in excess of $2000, specifically $457.66, was not authorized by I.R.C.P. 54(d)(1)(C)(ix). Garshelis argued that any amount in excess of that authorized by the rule should be considered discretionary. The district court ultimately concluded that Garshelis made no argument that the costs were necessary, exceptional and reasonably incurred, and should in the interests of justice be assessed against Bennett. Specifically, the district court found that this "was not [a] complex case and much of Warren's testimony was duplicative and unnecessary as he could not establish the shooting of Stanley was not an accident. Therefore, the excess cost of Gaylen Warren's expert witness fee in the amount of $457.66 shall not be considered discretionary." Garshelis fails to demonstrate that the district court abused its discretion. Moreover, as to the $457.66 in costs associated with Warren that were disallowed, Garshelis fails to demonstrate in the record that the excess cost was due to Warren testifying live versus the district court accepting his declaration in lieu of live testimony.

Garshelis also argues that the costs of mediation should have been ordered to be reimbursed by Bennett. Specifically, because mediation was not merely "encouraged," but court-ordered, the

costs incurred were exceptional and the district court's refusal to award those costs constitutes an abuse of discretion. Garshelis does not offer any legal support for the proposition that court-ordered mediation costs are per se exceptional. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

Garshelis fails to demonstrate that the district court abused its discretion in denying costs for court-ordered mediation. The district court explained that "all civil cases are eligible for referral to mediation under [I.R.C.P.] 37.1 and mediation is encouraged by the courts. There is nothing exceptional about the expenses incurred in mediation and the costs shall not be awarded as discretionary costs." The district court did not abuse its discretion in denying Garshelis's costs requests.[1]

## I.      Request for New Judge on Remand

Garshelis asks this Court to reassign this case to a different judge upon remand based on the district court judge's alleged bias. Garshelis argues that such an accusation is not taken lightly, but the district court judge's efforts to:

> (1) bend over backward to deny punitive damages when so evident, (2) dismiss [the negligent infliction of emotional distress claim] only to reinstate it and then to act as if it was always dismissed, despite being alerted to its reinstatement multiple times prior to the hearing, only to then re-dismiss it without any explanation as to why its reconsideration was suddenly improvident, (3) impose extensive delays in adjudicating the matter, including nearly three months from the default judgment hearing to a ruling on the merits, and then another two months just to decide a motion for costs; (4) disregard clear Supreme Court precedent concerning defaulted allegations and uncontradicted live testimony, (5) enter an award so contrary to the evidence, and even the bare minimum stated in the [first amended complaint], (6) invite Bennett to object, present witnesses and exhibits, offer his own briefing, findings and conclusions when his participation should have been "terminated"; and (7) assume that "cancel culture" was somehow orchestrated by Garshelis to prevent Bennett from securing counsel, leads to the inexorable conclusion that this judge should not get this matter on remand.

(internal citations omitted).

---

[1]      On page 50 of Garshelis's brief, there is a passing mention of her attorney and the district court's findings that other Idaho-based animal rights attorneys could have represented Garshelis. However, there is no discussion or argument regarding denied discretionary costs associated with the location of Garshelis's attorney. This Court will not infer an argument when not clearly stated. Therefore, we do not address the district court's denial of travel and lodging for Garshelis's attorney.

19

Whatever the source of the claimed bias or prejudice of the trial court, it must be so extreme as to display clear inability to render fair judgment. *Bach v. Bagley*, 148 Idaho 784, 791-92, 229 P.3d 1146, 1153-54 (2010). Unless there is a demonstration of pervasive bias derived from either an extrajudicial source or facts and events occurring at trial, there is no basis for judicial recusal. *Id.* at 792, 229 P.3d at 1154. The standard for recusal of a judge, based simply on information that the judge has learned in the course of judicial proceedings, is extremely high. *Id.* We do not agree that the record supports Garshelis's claim of bias. We, therefore, decline to order appointment of a different district judge on remand.

## IV.

## CONCLUSION

Based on the above, the amended judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings. As Bennett is the prevailing party on the majority of Garshelis's claims of error, costs on appeal are awarded to Bennett.

Judge GRATTON and Judge LORELLO, **CONCUR**.